# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Parsch et al.

v.

Ivor Massey, Jr., et al.

October 4, 2006

Case No. 04-193

BY JUDGE EDWARD L. HOGSHIRE

In this civil case regarding the validity of a corporate loan known as the "Triad Bridge Loan," only six Defendants remain. These are Triad, L.C. ("Triad"), Tovaris I.P., L.C. ("Tovaris I.P."), GlobalCerts, L.C. ("GlobalCerts"), Tovaris L.C. ("Tovaris"), Samuel G. Patterson, and Richard W. Gordon, pursuant to the Plaintiffs' nonsuit and refiled complaint.

At a July 6, 2006, hearing on various motions, final determinations on the Defendants' Demurrer, Defendants Gordon and Patterson's Plea of the Statute of Limitations, and Defendants Triad, Tovaris, and GlobalCerts'

Special Plea of the Statute of Limitations and Laches were reserved pending the Court's consideration of any supplemental and rebuttal memoranda submitted by the parties. After careful review of the authorities submitted and for the reasons set forth below, the Court hereby denies in part and grants in part the Defendants' Pleas of Statute of Limitations, denies the Defendants' Special Plea of Laches and sustains the Defendants' Demurrer.

## Statement of Facts

On December 10, 2004, the Plaintiffs filed a Bill of Complaint alleging conspiracy of the Defendants, shareholders of Tovaris, to deprive other shareholders of their investment value through default on a loan to Triad, an entity the Defendants owned and controlled. (Amended Bill of Complaint at 4-5.) The Plaintiffs seek equitable relief from the remaining Defendants for breach of fiduciary duty, breach of the shareholders' agreement, fraudulent transfer and conversion of assets, accounting, and fraud. (Amended Bill of Complaint at 10, 12-18.) Tovaris, Tovaris I.P., and GlobalCerts ("Corporate Defendants") filed a Counterclaim averring the validity of the corporate loan and seeking declaratory judgment, sanctions, and indemnification against the Plaintiffs. (Counterclaim at 9-11.)

At the July 6, 2006, hearing, the Court granted in part and denied in part the Defendant's Motion Craving Oyer, thus incorporating the Triad Bridge Loan Documents and Investor Rights Agreement into the Amended Bill of Complaint. The Court determined that the Plaintiffs failed to respond in a timely manner to new matters raised by the Corporate Defendants in their Special Plea of the Statute of Limitations and Laches. These new matters were deemed admitted for the Court's consideration of the motions.

## Choice of Law

Different choice of law rules apply depending on the nature of the plaintiffs' claims.

For the derivative claims, Delaware law will apply. Virginia has provided by statute that the law of the state of incorporation will govern issues of standing and grounds for dismissal. Va. Code § 13.1-672.3. In this case, since Tovaris was incorporated under the laws of Delaware, Delaware law will govern the derivative claims at this stage of the proceedings.

For the direct claims, Virginia substantive and procedural law applies. Virginia follows the rule of *lex loci*: the place of the wrong determines the substantive law to be applied in tort liability. *See McMillian v. McMillian*, 219

Va. 1127 (1979). Furthermore, the law of Virginia will determine whether a cause of action sounds in tort or contract. *Buchanan v. Doe*, 246 Va. 67, 70 (1993). Fraud is clearly a tort. *Ward's Equip. v. New Holland N. Am.*, 254 Va. 379, 385 (1997). Breach of fiduciary duty can be considered either as a tort or contract claim. *See Geographic Network Affiliates-International, Inc. v. Enterprise for Empowerment Found. at Norfolk State Univ.*, 69 Va. Cir. 428, 431 (Norfolk 2006). In that case, the court applied contract law, since the fiduciary duty would not have arisen but for the existence of a contract. *Id.*

In this case, the creation of a fiduciary duty is not dependent on a contractual relationship. Rather, the claim for breach of fiduciary duty is inextricably bound up with the fraud claim. Therefore, since Virginia is both the place of the wrong and the forum state, the Court will apply Virginia substantive and procedural law to the direct claim for fraud and the direct claim for breach of fiduciary duty.

For claims alleging breach of contract, Virginia courts apply the law of the parties' preference, if expressed in the contract. *Cf. Black v. Powers*, 628 S.E.2d 546 (Va. App. 2006). Section 3.2 of the Investor Rights Agreement states "This Agreement shall be governed by and construed under the laws of the Commonwealth of Virginia. . . ." Thus, Virginia law will apply to the claim for breach of contract.

### Defendants' Pleas of the Statute of Limitations

Plaintiffs' Counts II and V are derivative and direct claims for fraud, while Counts I and VI are derivative and direct claims for breach of fiduciary duty. In Virginia, claims for fraud and breach of fiduciary duty must be brought within two years of the date when the cause of action accrued. Va. Code §§ 8.01-243, 8.01-249 (fraud); Va. Code § 8.01-248 (breach of fiduciary duty). A cause of action for fraud accrues when the alleged fraud is discovered or should be discovered by due diligence, or "a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances." Va. Code § 8.01-243; *STB Mktg. Corp. v. Zolfaghari*, 240 Va. 140, 144 (1990).

No discovery rule is provided by the Virginia Code for breach of fiduciary duty, but some precedent supports that a discovery rule should apply. *See In re Southern Intern. Co.*, 165 B.R. 815, 825 (Bankr. E.D. Va. 1994); *International Surplus Lines Ins. Co. v. Marsh & McLennan, Inc.*, 838 F.2d 124, 128 (4th Cir. 1988). In this case, since the cause of action for breach of

124

fiduciary duty is virtually inextricable from cause of action for fraud, applying the discovery rule to these claims is appropriate, though the date when a cause of action accrued for each tort may differ.

A cause of action accrues when any damage, however slight, is sustained, not only when damages are measurable or compensable. *Eshbaugh v. Amoco Oil Co.*, 234 Va. 74, 360 (1987). Similarly, the statute of limitations begins to run at the moment a cause of action accrues, even if damages have not yet been sustained. *See Richmond Redevelopment and Housing Authority v. Laburnum Const. Co.*, 195 Va. 827 (1954). The statute thus runs against all future damages resulting from the wrongful act. *Brown v. ABC*, 704 F.2d 1296 (4th Cir. 1983).

As the original Triad Bridge Loan documents were executed on October 31, 2001, the Defendants contend that the Plaintiffs' December 10, 2004, Complaint, filed more than three years after this incident, came too late. Based on facts in the Special Plea that were deemed admitted when the Plaintiffs failed to respond, the Defendants claim that the Plaintiffs' causes of action for both fraud and fiduciary duty accrued before December 10, 2002. The Defendants assert that the Plaintiffs either discovered or should have discovered any fraud when Tovaris sent a letter to shareholders informing them of the loan and inviting their participation on November 5, 2001, when Tovaris sent them a letter describing the loan in December 2001, or when Tovaris announced they would be forced to default on the loan on February 11, 2002. (Supplemental Memorandum in Support of Special Plea of Statute of Limitations and Laches and Demurrer at 7.) Furthermore, the Defendants contend that the Plaintiffs sustained any breach of fiduciary duty in that time period.

As to Plaintiff Parsch, it is undeniable in light of the recent matters deemed admitted that he had discovered fraud and could claim breach of fiduciary duty before December 10, 2002. On November 21, 2001, Parsch sent a memorandum to Tovaris questioning the preferential treatment of the loan to shareholders in the Plaintiffs' position, demanded the opportunity to present objections in December 2001, and challenged the validity of the loan in a February 13, 2002, letter, calling it a preferential deal and threatening litigation. (*Id.* at 7-8.) Finally, he retained the services a law firm on March 22, 2002. Because Parsch demonstrated many times over that a cause of action for both torts accrued between November 2001 and March 2002, he clearly transgressed the statute of limitations by filing in December 2004. As an individual and as a trustee, Parsch is therefor barred from alleging fraud and breach of fiduciary duty claims.

However, the recent admissions do not necessarily bar the other Plaintiffs from their claims of fraud and breach of fiduciary duty. Conceivably, despite the letters from Tovaris that sounded the alarm for Parsch, there may be some reason why the Plaintiffs were unable to discover any harm until on or after December 10, 2002. The letters describing the terms of the loan or the necessity of default may have failed to reach some or all of them, and the terms may have been more obscure to them than to Parsch. Even if Parsch objected at all stages of these proceedings, the other Plaintiffs may have been unaware of his concerns. Asserting ignorance is difficult under Virginia's rule that the discovery of even the slightest injury gives rise to a cause of action; noticing flies on a grave has been found to constitute a cause of action long before the waterlogged casket was unearthed. *McHenry v. Adams*, 248 Va. 238, 243 (1994). Further complicating claims of ignorance, the pleadings inclusively alleged that "Plaintiffs, particularly Plaintiff Parsch," protested the damage to Tovaris done by the terms of the loan, which were disclosed long before December 10, 2002. (Amended Complaint ¶ 49.) The remaining Plaintiffs may also be able to show their inability to discover harm before the December 20, 2002, sale of Tovaris assets to Triad that allegedly stripped the Plaintiffs' stock of its value. When the alleged fraud and breach of fiduciary duty should have reasonably been discovered are factual issues awaiting future resolution. Thus, Defendants' Special Plea of the Statute of Limitations should be denied as to claims of fraud and breach of fiduciary duty for all Plaintiffs except Parsch, for whom the statute has clearly run and whose claims are thus barred.

## Defendants' Plea of Laches

The Defendants have asserted the equitable doctrine of laches, available in this case because the Plaintiffs initiated the action in equity. To succeed on the doctrine of laches, the defendant must show the plaintiff unjustifiably delayed filing suit and that that delay was prejudicial. *Russakoff v. Scruggs*, 241 Va. 135, 142 (1991). Whether the doctrine of laches should permit more or less time to file than prescribed by statute turns on the facts of the case. *American Surety Co. v. White*, 142 Va. 1 (1925). "Mere delay, unless it is unconscionable, is not enough. Where the way is still open to a full and fair ascertainment of all the facts, this doctrine does not apply." *Shirley v. Van Every*, 159 Va. 762 (1933) (citing *Whitlock v. Johnson*, 87 Va. 323 (1891)).

The Corporate Defendants claim that the Plaintiffs prejudiced them by "sitting" on their rights until filing this lawsuit. (Supplemental Memorandum in Support of Special Plea of Statute of Limitations and Laches and Demurrer

at 13-15.) However, the facts they cite are insufficient to justify dismissal of all of the Plaintiffs' claims on laches at this time. When applicable, the doctrine of laches demands the court's full understanding of the facts before any exercise of discretion, which cannot be achieved at this early stage of the proceedings.

## Defendants' Demurrer

A demurrer assumes the truth of the plaintiff's allegations set forth in the bill of complaint, not requiring proof of their validity. *Glazebrook v. Board of Supervisors*, 266 Va. 550, 554 (2003). Thus, the only question before the Court in sustaining or rejecting a demurrer is "whether the facts thus pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against the defendant." *Thompson v. Skate Am., Inc.*, 261 Va. 121, 128 (2001). In the Plaintiffs' Amended Bill of Complaint, they charge the Defendants, shareholders of the small corporation Tovaris, with conspiracy to deprive other shareholders of their investment value through default on a loan to Triad, an entity the Defendants owned and controlled. (Amended Complaint, ¶ 15.) Assuming the truth of the facts as alleged, the question is whether the Plaintiffs can validly assert causes of action against the Defendants for breaching their fiduciary duties and the Investor Rights Agreement, fraudulently transferring and converting assets, and engaging in intentional and constructive fraud. The Defendants contend that these claims are insufficient as a matter of law, fail to state a cause of action, and fail to state facts upon which relief can be granted.

## Economic Antagonism

The Defendants contend that the Plaintiffs lack standing to bring derivative claims because of the economic antagonism created by suing Tovaris for Tovaris. (Demurrer ¶ 27.) However, if this is the case, the Defendants must prove antagonism by showing that such a substantial conflict of interests exists between the Plaintiffs and other shareholders, which they have not yet done. *Emerald Partners v. Berlin*, 564 A.2d 670, 674 (Del. Ch. 1989). Furthermore, "[t]ypically [economic antagonism] involve[s] competing business interests." *Youngman v. Tahmoush*, 457 A.2d 376 (Del. Ch. 1983) (citing *Roussel v. Tidelands Capital Corp.*, 438 F. Supp. 684, 688 (N.D. Ala. 1977)). The Defendants have not demonstrated that the Plaintiffs have a competing business interest. Finally, the fact that the Plaintiffs are suing the corporation on behalf of the corporation will not suffice because derivative

actions in fact require naming the corporation as a defendant. *Sternberg v. O'Neil*, 550 A.2d 1105, 1124 (Del. 1988). The Defendants' contention of economic antagonism does not defeat the Plaintiffs' claim.

## Triad

The Defendants claim that Triad, as an outside company with no legal or contractual duties to the Plaintiffs, cannot properly be named as a party in the derivative claims. With regard to third-party liability for breach of fiduciary duty, Delaware law states:

> A third party may be liable for aiding and abetting a breach of a corporate fiduciary's duty to the stockholders if the third party "knowingly participates" in the breach. To survive a motion to dismiss, the complaint must allege facts that satisfy the four elements of an aiding and abetting claim: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty … (3) knowing participation in that breach by the defendants," and (4) damages proximately caused by the breach.

*Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001). A jury could reasonably infer that Triad knowingly participated in a breach of fiduciary duty by certain directors of Tovaris, and that such breach proximately caused damages sustained by the Plaintiffs. Accordingly, it would be inappropriate to dismiss Triad from the case on this ground.

## Standing for Direct Claims

For corporate shareholders to have standing when asserting direct claims, they must allege "an injury which is separate and distinct from that suffered by other shareholders. . . or a wrong involving a contractual right of a shareholder … which exists independently of any right of the corporation." *Moran v. Household Internat'l*, 490 A.2d 1059, 1070 (Del. Ch. 1985). Virginia adheres to a similar rule:

> A shareholder ordinarily cannot, as an individual as distinguished from a representative of the corporation, sue directors or other corporate officers for mismanagement, negligence, or the like on a cause of action which belongs to the corporation. The remedial rights of minority shareholders with

respect to wrongs committed against the corporation by the officers and directors in the management of corporate affairs are derivative rights and any action taken by the shareholders to redress such wrongs must be for the benefit of the corporation.

*Simmons v. Miller*, 261 Va. 561, 574 (2001). In *Simmons*, the minority shareholder in a closely held corporation alleged that the controlling shareholder had breached her fiduciary duty by transferring the assets of the corporation to another corporation that the defendant owned exclusively. The plaintiff brought direct claims for breach of fiduciary duty and fraud. In upholding partial summary judgment, the Supreme Court of Virginia required that a claim for breach of fiduciary duty be brought as a derivative claim, not a direct one. *Id.* at 572-76.

In this case, the Plaintiffs' breach of fiduciary duty and fraud claims are essentially derivative claims. The Plaintiffs' Direct Count for Breach of Fiduciary Duty, Count VI, states "the Plaintiffs have lost the value of their investment, being left with worthless Tovaris shares. . . ." (Amended Complaint, ¶ 78.) The injury is that the alleged breach of fiduciary duty resulted in a draining of the assets of Tovaris, leaving the shares worthless. Loss of share value is a classic derivative claim. The injury resulting from the Defendants' alleged conduct is to Tovaris and the appropriate remedy would flow to the corporation, not the shareholders.

Similarly, Count V alleges that the Plaintiffs were injured as a result of their detrimental reliance on the Defendants' fraud. Specifically, this reliance resulted in the Plaintiffs' voting for the Triad Bridge Loan transaction. (Amended Complaint ¶ 71.) Again, the injury resulting from the Triad Bridge Loan was injury to Tovaris, and the appropriate remedy would flow to the company, not the shareholders.

Finally, though the claim for breach of the Investor Rights Agreement is a truly direct claim, the only parties in the contract were Tovaris through Gordon's signature, and KFP Trust through Parsch's signature, as KFP Trustee. Contrary to the Plaintiffs' allegations, the Investor Rights Agreement did not confer rights of first refusal on any shareholder with more than 20,000 shares. Rather, the Investor Rights Agreement only conferred such rights on KFP Trust. Accordingly, Count VII does not accurately reflect the parties involved in the contract, and, to this extent, the Defendants' demurrer is well-placed.

### Accounting of Sale

Delaware equity grants courts broad discretion to fashion decrees suitable to the circumstances presented. *Harman v. Masoneilan Internat'l, Inc.*, 442 A.2d 487, 500 (Del. 1981). As a result, the Defendants' argument

that the Plaintiffs should be denied an accounting of sale of the Triad Bridge Loan transaction is premature. (Supplemental Memorandum in Support of Special Plea of Statute of Limitations and Laches and Demurrer at 7.) During the demurrer stage, the Court looks to the adequacy of the cause of action, not the suitability of the remedy, and thus will not deny the request for an accounting of sale at this time.

## Specificity of Fraud Pleadings

The Defendants contend that the Plaintiffs have not pleaded fraud with sufficient particularity and specificity. (Demurrer ¶¶ 28-38.) In order to adequately prepare their case, the Defendants must rely on particularized pleadings alleging a cause of action against them. Delaware Court of Chancery Rule 9(b) provides that:

> In all averments of fraud … the circumstances constituting fraud … shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally. The factual circumstances that must be stated with particularity refer to the time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and what that person(s) gained from making the misrepresentation.

Del. Ch. Ct. R. 9(b).

Assuming as true that some or all of these parties falsely told the Plaintiffs that no alternatives were available besides the Triad Bridge Loan and that the loan had not been executed, then later concealed that the loan was in default, a cause of action for fraud could exist. (Amended Complaint ¶¶ 28-37.) However, the Amended Complaint has not been specifically pleaded. Times and places are vague, and the content of the alleged misrepresentations has not been adequately fleshed out. (See, e.g., Amended Complaint ¶ 68.) Though the Plaintiffs have added substance to their claims in their later briefs, the pleadings themselves do not substantively describe the fraudulent nature of the Defendants' words and actions. Especially given the numerous Defendants in the case, many dismissed or nonsuited, the Plaintiffs must specifically state who is being charged with what allegations. Other than naming Massey and Gordon as the "two principal conspirators," the Plaintiffs use only the blanket term "Defendants" in assigning responsibility for various actions. (Amended

130

Complaint ¶¶ 21, 24.) The Corporate Defendants have not had any specific allegations made against them. As pleaded, the Plaintiffs' fraud claims are insufficiently specific to survive the Defendants' Demurrer.

## Demand Futility

Delaware law requires a formal demand of the board of directors with respect to derivative claims unless plaintiffs show the futility of a demand. *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). To show demand futility, the plaintiff must meet one of two prongs: either the plaintiff must, under the particularized facts alleged, create a reasonable doubt that the directors are disinterested and independent, or the plaintiff must create a reasonable doubt that the particular decision was the product of a valid business judgment. *Id.* at 256. To satisfy the second prong, the plaintiff must create reasonable doubt that, measured by concepts of gross negligence, the board considered all material facts reasonably available. *Id.* at 259. The Plaintiffs in this case have not alleged that the board was grossly negligent in considering the material facts reasonably available.

Instead, the Plaintiffs argue that demand should be excused since there is a reasonable doubt that the directors are disinterested and independent. A disabling interest can be shown in one of two ways:

> [A] director personally receives a benefit (or suffers a detriment) as a result of, or from, the challenged transaction which is not generally shared with (or suffered by) the other shareholders of his corporation, and that benefit (or detriment) is of such subjective material significance to that particular director that it is reasonable to question whether that director objectively considered the advisability of the challenged transaction to the corporation and its shareholders. The second instance is when a director stands on both sides of the challenged transaction.

*Orman v. Cullman*, 794 A.2d 5 (Del. Ch. 2002). It is insufficient for the Plaintiffs to argue that the board is not disinterested since it approved the underlying transaction. *Brehm*, at 257, n. 33. To show lack of independence, a plaintiff "must allege particularized facts manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling.' The shorthand shibboleth of 'dominated and controlled directors' is insufficient." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) (citations omitted).

. In this case, the Plaintiffs have alleged with specificity that Defendants Massey and Patterson were not disinterested insofar as Massey was involved on both sides of the transaction and Patterson allegedly was to receive shares of Triad for his participation in Massey's fraud. (Amended Complaint, ¶¶ 42, 46.) The Plaintiffs have alleged that Defendant Gordon was not independent since he "knowingly cooperated in Massey's schemes." (Amended Complaint, ¶ 45.)

The Amended Bill of Complaint does not allege that the other director Defendants, Harold Lankenau, Sanfjord Teu, Sanjay Vakharia, Richard F. Gorman, III, Roland S. Gerard, Kevin Conley, Stanley K. Joynes, III, Jonathan S. Tunner, Robert Starling, Roy Stephan, Gary McGraw, and M. Bernard Siegel, were related to, beholden to, dominated by, or otherwise not independent of Defendants Massey, Patterson, or Gordon. Nor have the Plaintiffs alleged that these director Defendants were involved on both sides of the transaction or that they have received a benefit or detriment not shared by other shareholders. Therefore, since the Plaintiffs have not alleged that demand was made and since they have failed to plead futility of demand with sufficient specificity, the derivative claims cannot survive the Defendants' demurrer.

## Conclusion

In summary, though several of the issues raised by the Defendants are not dispositive, nor the statute of limitations fatal to any but Parsch's claims, the Plaintiffs' insufficient pleadings of fraud and demand futility cannot survive the Defendants' Demurrer. Furthermore, the Plaintiffs' "direct" claims are inappropriately pleaded, as they are, in fact, derivative claims. The Court denies Defendants' Pleas of Statute of Limitations for all but Parsch and denies the Special Plea of Laches. Should the Plaintiffs wish to address the deficiencies in the Amended Complaint by repleading, the Court will allow them twenty days from the date shown above to do so.