NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0035n.06
Filed: January 16, 2009

No. 07-4067

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| | ) | |
| **ROBERTA CASDEN, Derivatively on Behalf of Dana Corporation,** | ) ) ) | |
| *Plaintiff-Appellant,* | ) ) | **ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE** |
| v. | ) ) | **NORTHERN DISTRICT OF OHIO** |
| **MICHAEL J. BURNS; ROBERT C. RICHTER;** *et al.* | ) ) ) | **O P I N I O N** |
| *Defendants-Appellees.* | ) ) ) ) | |

Before:  BOGGS, Chief Judge; CLAY, Circuit Judge; and BERTELSMAN,* District Judge.

   **CLAY, Circuit Judge.**   Like several other cases pending before various courts, this case

arises out of the financial collapse of automotive parts dealer Dana Corporation ("Dana"). Following

the company's collapse in 2005, Dana's shareholders initiated a number of class action suits against

Dana and its officers and directors. In this case, Plaintiff Roberta Casden ("Casden") alleges that

a number of Dana's officers and directors breached their fiduciary duty to Dana's shareholders. One

day after Casden filed her original complaint asserting a number of derivative claims, however, Dana

---

   * The Honorable William O. Bertelsman, United States District Court for the Eastern District
of Kentucky, sitting by designation.

filed a petition for Chapter 11 bankruptcy relief. As a result of the bankruptcy filing, the district court automatically stayed Casden's derivative claims. Casden then proceeded to amend her complaint to assert a new class-action claim ("Count I") alleging breach of fiduciary duty under state law against Dana's officers and directors. Defendants jointly moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The district court entered an order dismissing Casden's claim. This appeal followed.

For the reasons set forth below, we hereby affirm the judgment of the district court.

**I.**

Dana is a supplier of automotive parts and drive-train systems for light, commercial, and off-highway vehicle manufacturers. Based on a series of positive financial statements, the value of Dana's stock steadily increased throughout 2004 and into 2005, until Dana quickly fell into financial ruin beginning in September of 2005.

In a series of announcements commencing on September 15, 2005, Dana advised the public that it had identified material weaknesses in its internal control over financial reporting, primarily in the accounting procedures of Dana's Commercial Vehicle Systems Division. After advising the public that its recent financial reports could no longer be relied on, Dana's Audit Committee engaged independent counsel and forensic accountants to investigate the matter. The results of that investigation led Dana to restate its financial reports for the first and second quarters of fiscal year 2005, as well as all of fiscal years 2002 through 2004. Dana also announced that the investigation

had uncovered deficiencies in its financial reporting. The market reaction was swift and unkind, with Dana's stock price dropping nearly 35% in one day on record trading volume.

Following Dana's collapse, Dana's shareholders initiated several class-action suits against Dana and its officers and directors. *See, e.g.*, *Frank v. Dana Corp.*, 547 F.3d 564 (6th Cir. 2008). In this case, Casden alleges that a number of Dana's officers and directors breached their fiduciary duty to Dana's shareholders. On March 2, 2006, Casden brought suit in the district court asserting derivative claims on behalf of Dana and its shareholders. The next day, however, Dana filed a petition for relief under Chapter 11 of the U.S. Bankruptcy Code. As a result of Dana's bankruptcy filing, the district court automatically stayed Casden's derivative claims.

On August 15, 2006, Casden filed a second amended complaint asserting a new class-action direct claim alleging breach of fiduciary duty under state law against a number of Dana's officers and directors.[1] Specifically, Casden alleges that Defendants failed to exercise due care and breached their duties of loyalty, good faith, and independence by grossly mismanaging the company and failing to "protect against the numerous conflicts of interest resulting from their own interrelationships or connection with the bankruptcy." (J.A. 215.) Although not expressly articulated in the complaint, Casden's brief to this Court alleges that Defendants forced Dana into

---

[1]Defendants point out that none of the individual Defendants are currently affiliated with Dana. Defendant Richter retired from Dana on March 6, 2006, shortly after Dana filed for bankruptcy. On January 31, 2008, the date that Dana's bankruptcy reorganization plan became effective, the Defendant Directors resigned from Dana's Board of Directors and Defendant Burns resigned from his board and executive positions. *See In re Dana Corp.*, No. 06-10354, 2007 WL 4589331, at *8 (Bankr. S.D.N.Y. Dec. 26, 2007).

bankruptcy primarily to shield themselves from potentially significant personal liability in the numerous civil actions arising out of Dana's financial collapse.

Specifically, Count I, Casden's new "direct" claim, alleges that Dana's shareholders have been "uniquely harmed" by the petition for bankruptcy because, among other things, class members have been "relegated to a lower priority of debt" and have been "foreclos[ed] . . . from protecting the interests of Dana against the misconduct of the Company's officers and directors." (J.A. 215.) Elsewhere in the complaint, Casden claims that the losses suffered by members of the shareholder class were "in the form of a decline in the price of their shares before and after defendants caused Dana to file the petition for bankruptcy." (J.A. 156.)

On October 27, 2006, Defendants jointly moved to dismiss Count I of the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants' motion argued that Count I was derivative in nature and thus Casden was precluded from asserting such a claim, and that federal bankruptcy laws preempted the state laws on which Casden based her breach of fiduciary duty claim.

On July 13, 2007, the district court entered an order dismissing Casden's breach of fiduciary duty claim. *Casden v. Burns*, 504 F. Supp. 2d 272 (N.D. Ohio 2007). In that order, the district court did not dismiss or otherwise act on Casden's stayed derivative claims. In entering judgment on Defendants' motion, however, the district court ordered the case "closed." The district court's docket indicates that the action was "terminated" on the same date. This appeal followed.

- 4 -

**II.**

Defendants contend that this Court lacks jurisdiction to consider this appeal because the district court's order did not constitute a final order resolving all of Casden's claims. In particular, Defendants point to the fact that Casden's derivative claims were stayed by order of the district court on June 29, 2006, and that those claims have never been dismissed or withdrawn. We conclude that the district court's order dismissing Casden's amended complaint constitutes a "final decision" for purposes of § 1291, and thus supports appellate review.

**A.**

Casden asserts that this Court has jurisdiction under 28 U.S.C. § 1291, which provides that "the courts of appeals … shall have jurisdiction of appeals from all final decisions of the district courts of the United States." Although there is "no statute or rule that specifies the essential elements of a final judgment," *United States v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 233 (1958); *McDermott v. United States*, 954 F.2d 1245, 1249 (6th Cir. 1992) ("There is no rule or statute that prescribes exactly what form a [final] judgment must take."), a judgment generally is considered "final" for purposes of § 1291 if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521-22 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

The fundamental rationale underlying the "final decision" prerequisite is judicial economy: permitting only a single review of all issues avoids the waste of time and resources which inevitably

would result if piecemeal appeals were permitted. *See Paliaga v. Luckenbach S.S. Co.*, 301 F.2d 403, 406-07 (2d Cir. 1962). To that end, the Supreme Court has instructed that § 1291's finality requirement is to be given a "practical rather than a technical construction." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949); *see also Fiataruolo v. United States*, 8 F.3d 930, 937 (2d Cir. 1993) ("Finality is determined on the basis of pragmatic, not needlessly rigid *pro forma*, analysis. This approach better serves the overriding aim of the Federal Rules of Civil Procedure to dispose expeditiously and inexpensively of every action.").

In *Schaefer Brewing*, the Supreme Court examined several factors in determining whether a district court's judgment was final. 356 U.S. at 231-35. In applying *Schaefer Brewing*, and consistent with the pragmatic approach to finality, this Court has emphasized that, "[p]rimarily, a reviewing court should consider whether the trial judge has or has not clearly declared his intention that his opinion embody a final decision, or whether all of the elements necessary for a final decision are present in a given order or opinion." *Advanced Accessory Sys., LLC v. Gibbs*, 71 Fed. Appx. 454, 459 (6th Cir. 2003) (internal quotation marks and citations omitted).

**B.**

Defendants argue that the district court's order dismissing the fiduciary duty claim is not an appealable final order because Casden's derivative claims are still pending before the district court. Casden responds that any jurisdictional issue has become moot because Dana's now-approved Chapter 11 reorganization plan provides for the cancellation of all of Dana's pre-petition stock

effective January 31, 2008.[2]  Defendants nonetheless contend that, under *ATAC Corp. v. Arthur Treacher's, Inc.*, 280 F.3d 1091 (6th Cir. 2002), Casden's appeal should be dismissed for lack of jurisdiction because the district court has yet to enter an order disposing of those claims.

In *ATAC*, the plaintiff appealed from the district court's order "perpetually staying further proceedings and closing the . . . case subject to reopening for good cause shown upon written motion by either party, after completion of the arbitration process." *Id.* at 1094.  The defendant moved to dismiss the appeal for lack of jurisdiction, arguing that the district court's order staying the proceedings pending arbitration was not a "final" order.  Concluding that "the stay order . . . was interlocutory rather than final," the *ATAC* Court held that district court's order "is not appealable." *Id.* at 1098.

Defendants' reliance on *ATAC* is misplaced.  Unlike *ATAC*, Casden appeals from the order dismissing her breach of fiduciary duty claim, not from the district court's order staying her derivative claims.  That distinction is crucial because all parties agree that the approval of Dana's bankruptcy reorganization plan cancelled Casden's stock, and thus extinguished her right to bring derivative claims on behalf of Dana.  Consequently, the district court's July 13, 2007 order dismissed Casden's only remaining viable claim in this case.  The district court's dismissal order thus constitutes a final judgment supporting appeal, notwithstanding the fact that Casden's now-defunct

---

[2]Because Virginia law requires continuous stock ownership for a plaintiff to maintain a derivative action, the cancellation of Casden's stock effectively extinguishes her right to pursue any derivative claims. *See Firestone v. Wiley*, 485 F. Supp. 2d 694, 700-01 (E.D. Va. 2007).

derivative claims technically are still stayed. *See Morton Int'l v. A.E. Staley Mfg. Co.*, 460 F.3d 470, 477-78 (3d Cir. 2006) ("a case dismissed without prejudice that cannot be reinstated is in the same position as a case dismissed with prejudice in that both cases have reached finality").

Moreover, the district court's judgment ordered the case "closed," and the district court's docket lists the action as having been "terminated" on the same date. In light of these actions, we are satisfied that the district court plainly intended the dismissal order at issue here to be its final action in this case. As the Supreme Court has long recognized, "no form of words and no peculiar formal act is necessary to evince [the] rendition [of a final judgment]." *United States v. Hark*, 320 U.S. 531, 534 (1944). *See also Paliaga v. Luckenbach S.S. Co.*, 301 F.2d 403, 407 (2d Cir. 1962) ("Neither the use of specific words nor the doing of any particular action by the trial judge is necessary in order to signify that he has made his final judgment."). Rather, it is necessary only "to determine whether the language of the opinion embodies the essential elements of a judgment . . . and clearly evidences the judge's intention that it shall be his final act in the case." *Schaefer Brewing Co.*, 356 U.S. at 232. *See also Diaz-Reyes v. Fuentes-Ortiz*, 471 F.3d 299, 301 (1st Cir. 2006) (dismissing appeal for lack of jurisdiction even though judgment had been entered under Rule 58 because "the district court's order reveals that the court did not intend this order to be a final judgment disposing of the litigation"); *Goodwin v. United States*, 67 F.3d 149, 151 (8th Cir. 1995) (requiring only "some clear and unequivocal manifestation by the [district] court of its belief that the decision made, so far as the court is concerned, is the end of the case."); *Paliaga*, 301 F.2d at 407

(requiring only "that there be some manifestation by the judge that it is his intention that the decision he makes is his final act in the case").

In this case, it is evident that the district court intended its dismissal order to be its final judgment and leaves no issues pending for further proceedings. Accordingly, this Court has jurisdiction to hear Casden's appeal because the district court's order and entry of judgment clearly evinced its intention that this would be its "final act in the case." *Schaefer Brewing*, 356 U.S. at 233.

## III.

In dismissing Casden's state law breach of fiduciary duty claim, the district court held that the claim was not ripe for review, concluding that the claim "would not be ripe at least until a plan for reorganization were approved in Bankruptcy Court." *Casden*, 504 F. Supp. 2d at 279. At the time Casden filed her amended complaint, it was unclear whether or to what extent Dana's bankruptcy filing would affect shareholder rights. Thus, to the extent that Casden sought recovery based on lost shareholder rights, Casden's claims were speculative. While this appeal was pending, however, Dana's bankruptcy reorganization plan was approved and thus all Dana's pre-petition stock was cancelled effective January 31, 2008.

In light of this intervening change in circumstances, we conclude that Casden's claim is now ripe for judicial review.

**A.**

The Supreme Court has stated that the "basic rationale" of the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967). This Court has set out three factors that are central to the ripeness inquiry:

> First, we examine the likelihood that the harm alleged by the plaintiffs will ever come to pass. Second, we consider whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties; respective claims. Finally, we must assess the hardship to the parties if judicial relief is denied at this stage in the proceedings.

*Adult Video Ass'n v. United States Dep't of Justice*, 71 F.3d 563, 568 (6th Cir. 1995) (quotation marks and citations omitted). The first factor reflects the fact that "[r]ipeness, while often spoken of as a justiciability doctrine distinct from standing, in fact shares the constitutional requirement of standing that an injury in fact be certainly impending." *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996). The last two considerations, on the other hand, reflect the "prudential aspect of ripeness." *Id.* at 1427-28. As this Court has noted, the ripeness inquiry includes considerations that require "that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances." *Brown v. Ferro Corp.*, 763 F.2d 798, 801 (6th Cir. 1985).

In determining the "likelihood" that an injury will come to pass, the Supreme Court has made

clear that "[o]ne does not have to await consummation of threatened injury to obtain preventive relief." *Blum v. Yaretsky*, 457 U.S. 991, 1000 (1982). But such claims generally involve a plaintiff seeking declarative or injunctive relief from future events. In any event, to satisfy constitutional requirements a threatened injury must be sufficiently "imminent." *Nat'l Treasury*, 101 F.3d at 1428. For example, in the *Regional Rail Reorganization Act Cases*, 419 U.S. 102 (1974), the Court deemed ripe an action brought by eight major railroads challenging the conveyance of their property to Conrail. Although a reorganization plan had not yet been formulated and a special court had not yet ordered the conveyances, the Court reasoned that "where the *inevitability* of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect."[3] *Id.* at 143 (emphasis added). Although not requiring "inevitability," this Court has held that a claim is ripe when it is "highly probable" that the alleged harm or injury will occur. *See Kardules v. City of Columbus*, 95 F.3d 1335, 1344 (6th Cir. 1996).

In determining whether changes in circumstances that occur over the course of the litigation affect the ripeness inquiry, the Supreme Court has declared that "ripeness is peculiarly a question of timing," and thus, where a "change in circumstance has substantially altered the posture of the case as regards the maturity of [plaintiff's claims,] . . . it is the situation now rather than the situation

---

[3]In her concurrence in *Reno v. Catholic Soc. Servs.*, 509 U.S. 43 (1993), Justice O'Connor explained that, "[i]f it is 'inevitable' that the challenged rule will 'operate' to the plaintiff's disadvantage—if the court can make a firm prediction that the plaintiff will apply for the benefit, and that the agency will deny the application by virtue of the rule—then there may well be a justiciable controversy that the court may find prudent to resolve." *Id.* at 68 (O'Connor, J., concurring).

at the time of the District Court's decision that must govern."[4] *Reg'l Rail Reorganization Act Cases*, 419 U.S. at 139-40. *Accord Buckley v. Valeo*, 424 U.S. 1, 114-18, (1976) (per curiam).

## B.

In dismissing Count I, the district court *sua sponte* held that Casden's claim was not ripe for review because the effect of the bankruptcy proceeding on shareholders was unknown at the time. Specifically, the district court noted that it was possible that shareholders could "retain the exact level of ownership they had before the company filed for Chapter 11, or even . . . enjoy an increase in the value of their shares as a result of reorganization." *Casden*, 504 F. Supp. 2d at 279. Because the effect of Dana's bankruptcy filing on the value of Casden's stock and the rights that attached to her shareholder interest were uncertain at the time of filing, the district court's ripeness determination may have been correct. *See NRA of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997) ("Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all.").

---

[4]In *Reno v. Catholic Soc. Servs.*, however, the Supreme Court reached a seemingly contrary result, holding that a claim is not fit for judicial consideration if the alleged injury is not ripe at the time of filing, even if it "would ripen" at some point in the future. 509 U.S. at 59 ("In these circumstances, the promulgation of the challenged regulations did not itself give each CSS and LULAC class member a ripe claim; a class member's claim would ripen only once he took the affirmative steps that he could take before the INS blocked his path by applying the regulation to him."). Rejecting this approach as "incorrect law," Justice O'Connor argued in her concurrence in *Reno* that the relevant question "is not whether the class members' claims were ripe at the inception of these suits," but rather whether the claims "became ripe" over the course of the litigation. 509 U.S. at 73 (O'Connor, J., concurring).

Now, however, the intervening approval of Dana's bankruptcy reorganization plan cancelled Casden's stock. In light of this change in circumstances, the effect of the bankruptcy plan on Dana's shareholders is no longer uncertain. As a result, Casden's claims have become ripe.

The "basic rationale" behind the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements," *Abbott Laboratories*, 387 U.S. at 148, such as when a dispute is premised on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-581 (1985) (quotation marks omitted). In this case, however, Dana's reorganization plan has been approved, and thus Casden's claims no longer involve "abstract disagreements" and there no longer is a concern that her alleged injuries "may not occur as anticipated." On January 31, 2008, the date Dana's reorganization plan became effective, Dana's pre-bankruptcy shares were cancelled and, as a result, Casden and other shareholders lost the value of their stock and all rights attached thereto. Given that the alleged injuries now are a reality, there is no constitutional problem with judicial adjudication of Casden's claim. Nor does prudence justify dismissing Casden's claim.

We therefore hold that Casden's claim is now ripe for adjudication.

**IV.**

We next consider whether Casden's state law claim is in fact a derivative claim and therefore should be dismissed.

- 13 -

**A.**

The propriety of a dismissal pursuant to Fed. R. Civ. P. 12(b) is a question of law that is subject to *de novo* review. *Duby v. Wells*, 506 F.3d 422, 427 (6th Cir. 2007); *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). In reviewing Casden's claims, the Court "must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true. When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (internal citation omitted). To survive a motion to dismiss, the complaint must allege grounds entitling plaintiff to relief, which requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level."[5] *Id.* at 1965.

**B.**

Whether Casden's claim is direct or derivative is governed by the law of Virginia, Dana's state of incorporation. *See Burks v. Lasker*, 441 U.S. 471, 479 (1979); *In re General Tire and*

---

[5]Contrary to Casden's contention, the standard announced in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that a complaint should not be dismissed for failure to state a claim "unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," was "retire[d]" by the Court in *Twombley*. 127 S. Ct. at 1968-69 (noting that *Conley*'s "no set of facts" language "has been questioned, criticized, and explained away long enough," and is "best forgotten").

*Rubber Co. Sec. Lit.*, 726 F.2d 1075, 1080-81 (6th Cir. 1984).

The Supreme Court of Virginia has held that "[a] shareholder ordinarily cannot, as an individual as distinguished from a representative of the corporation, sue directors or other corporate officers for mismanagement, negligence or the like, on a cause of action which belongs to the corporation." *Simmons v. Miller*, 544 S.E.2d 666, 674 (Va. 2001) (citation omitted). In such cases, "[t]he remedial rights of minority shareholders with respect to wrongs committed against the corporation by the officers and directors in the management of corporate affairs are derivative rights and any action taken by the shareholders to redress such wrongs must be for the benefit of the corporation." *Id.* (citation omitted). Accordingly, "under Virginia law, a shareholder may not directly bring suit against an officer or director for breach of fiduciary duty." *Gabriel v. Preble*, 396 F.3d 10, 12 (1st Cir. 2005) (citing *Simmons*, 544 S.E.2d at 675). *Accord Parsch v. Massey*, 72 Va. Cir. 121, 128; 2006 Va. Cir. LEXIS 304 (Va. Cir. Ct. 2006) ("The injury resulting from the Defendants' alleged [breach of fiduciary duty] is to [the corporation] and [thus] the appropriate remedy would flow to the corporation, not the shareholders.").

Under Virginia law, such claims are derivative in nature even where the alleged mismanagement caused the value of the company's shares to decline in value, or even become worthless. *See Parsch*, 72 Va. Cir. at 128 ("Loss of share value is a classic derivative claim."); *Gaff v. FDIC*, 814 F.2d 311, 317-18 ("We simply conclude that damages resulting from directors' misconduct which merely consist of the diminishment or destruction of the value of corporate stock do not qualify as a direct or personal injury to a shareholder[.]"), *vacated in part on other grounds*

*on reh'g*, 828 F.2d 1145 (6th Cir. 1987).  In other words, as this Court has recognized in other contexts, "'diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right.'"  *Warren v. Manufacturers Nat'l Bank*, 759 F.2d 542, 544 (6th Cir. 1985) (rejecting plaintiff's assertion, in an action brought under RICO, that traditionally derivative claims could be asserted individually where shareholder "lost his total investment when his stock became worthless" as a result of bankruptcy filing) (quoting *Stevens v. Lowder*, 643 F.2d 1078, 1080 (5th Cir. 1981)).

**C.**

In her second amended complaint, Casden alleges that she and other members of the class "have been harmed by defendants in the form of a decline in the price of their shares before and after defendants caused Dana to file the petition for bankruptcy." (J.A. 156.)  Indeed, the only recovery Casden seeks is for monetary damages that resulted from the diminution in corporate value.  But any decline in the value of Dana's stock harmed all shareholders, and thus any damage caused by Defendants' purported failure to pursue options other than bankruptcy was to the company as a

whole.[6] Under Virginia law, such claims unquestionably are derivative in nature and may be asserted only on behalf of Dana.

Casden attempts to overcome this problem by claiming that she seeks redress of certain "unique" harms to shareholders arising out of the loss of important shareholder rights due to the bankruptcy filing, including voting rights and the rights to inspect Dana's books, among other things. But Casden did not assert any claims regarding lost shareholder rights in her amended complaint, that is, other than the right to bring derivative actions. The other allegations of lost rights Casden relies on before this Court—lost voting rights, elimination of the annual meeting requirement,

---

[6]Casden attempts to distinguish the harm to shareholders by arguing that Defendants' decision to file for bankruptcy was "for the benefit of Dana, but not the benefit of plaintiff and the Class." Casden's argument fails to recognize that there is nothing about a bankruptcy filing that *necessarily* causes distinct and separate harms to shareholders. In fact, as Defendants rightly point out, because a bankruptcy reorganization plan is intended to restructure a business so that it can continue to operate, bankruptcy may benefit shareholders. In particular, Casden claims that shareholders were uniquely harmed by Dana's bankruptcy filing because the "cram down" provisions of the Bankruptcy Code, 11 U.S.C. § 1129(b), relegated shareholders to a lower debt priority. But bankruptcy "cram down" procedures reflect the well-settled principle that shareholders are entitled to payment only after other creditors have been satisfied. Even without bankruptcy, Virginia law provides that shareholder rights are subordinate to creditors' claims. *See Marshall v. Fredericksburg Lumber Co.*, 173 S.E. 553, 557 (Va. 1934) ("A stockholder's rights are deferred to those of a creditor in the distribution of assets. The creditors are entitled to full payment of their debts before the stockholder participates therein."). Thus, if Casden's interests are eliminated by a "cram down," that harm is merely a consequence of Dana's current financial condition, it is not a harm that is unique to the shareholders, and it is not an inherent result of the bankruptcy process.

termination of the right to inspect Dana's books, and reduction in ownership interests—were not set forth in her second amended complaint.[7]

Having failed to raise these claims below, Casden cannot assert them for the first time on appeal. *See Taft Broadcasting Co. v. United States*, 929 F.2d 240, 243 (6th Cir. 1991) ("As a rule, this court declines to entertain arguments not presented in the first instance to the district court."). "The appropriate method for adding new factual allegations to a complaint is not via an appellate brief, but by filing an amended complaint." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328 (6th Cir. 2006). Where a party fails to follow this protocol, we generally will "disregard the new set of facts alleged for the first time on appeal[.]" *Id.* at 329.

In any event, even if these arguments had been set forth in the second amended complaint, the purported deprivation of shareholder rights does not convert a plainly derivative claim into a direct claim. Casden seeks monetary damages for the lost value of her stocks which have now been cancelled. The incidental loss of shareholder rights does not constitute an injury that is distinct from the harm suffered by all shareholders. Thus, the alleged loss of shareholder rights, even if properly raised, would not give rise to a direct individual action. *See Gaff*, 814 F.2d at 317-18. Simply put,

---

[7]Nor does Casden's complaint allege that she ever attempted to exercise any of these rights. Therefore, even if they had been listed in Count I, serious questions would arise regarding Casden's standing to assert such claims. The "irreducible constitutional minimum of standing" contains three requirements: injury in fact, causation, and redressability. *Steel Co. v. Citizens For a Better Environment*, 523 U.S. 83, 102-03 (1998); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). The injury-in-fact element requires a plaintiff to demonstrate that the harm allegedly suffered "is concrete and actual or imminent, not conjectural or hypothetical." *Steel Co.*, 523 U.S. at 103 (citation and quotation marks omitted).

Casden fails to allege any harm—either in her complaint or before this Court—that is distinguishable from the overarching harm to Dana and borne by all shareholders generally.

Moreover, even if Casden were able to overcome these other issues, the complaint seeks only "appropriate monetary damages, including, but not limited to, the damages to Dana shareholders caused by the bankruptcy." (J.A. 219.) As explained above, however, recovery of monetary damages for the lost value of stock is a "classic derivative claim." *Parsch*, 72 Va. Cir. at 128.

Finally, Casden's claim that the bankruptcy filing "extinguished" her shareholder rights is wrong as a matter of law. As the district court properly recognized, shareholders are "able to vote, object, and otherwise participate in the [bankruptcy] reorganization process." *Casden*, 504 F. Supp. 2d at 279 n.4 (citing 11 U.S.C. §§ 1126(a), 1126(c)). This is true of each of the shareholder rights that Casden alleges that she has lost, except of course the "right" to bring derivative claims, which always belonged to the company and thus was never Casden's to lose.

Casden asserts claims against Dana's officers and directors for breach of fiduciary duty and corporate mismanagement, seeking recovery of the lost value of her stock. Under Virginia law, such claims unquestionably are derivative in nature.[8] We therefore **AFFIRM** the district court's order dismissing Casden's state law breach of fiduciary duty claim.

---

[8]In dismissing Casden's claim, the district court also concluded that federal bankruptcy law preempts Casden's state law claim, concluding that "it is distinctly the province of bankruptcy law to determine liability for improper actions relating to bankruptcy filings, [and thus] Casden's claim is preempted." *Casden*, 504 F. Supp. 2d at 282. Because we affirm on other grounds, we need not reach the preemption question.