RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0130p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

LES KEPLEY; BRUCE KEPLEY,

      *Plaintiffs-Appellants*,

     *v.*

No. 12-5078

GERALD L. LANZ,

      *Defendant-Appellee*.

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:10-cv-695—Charles R. Simpson III, District Judge.

Argued: November 30, 2012

Decided and Filed: May 9, 2013

Before: SUTTON and STRANCH, Circuit Judges; STEEH, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Ryan T. Polczynski, PEDLEY & GORDINIER, PLLC, Louisville, Kentucky, for Appellants. Larry Selander, DUANE MORRIS LLP, Chicago, Illinois, for Appellee. **ON BRIEF:** Ryan T. Polczynski, James R. McKenzie, PEDLEY & GORDINIER, PLLC, Louisville, Kentucky, for Appellants. Larry Selander, DUANE MORRIS LLP, Chicago, Illinois, for Appellee.

_____

## OPINION

_____

JANE B. STRANCH, Circuit Judge. This appeal grows out of a claim by Plaintiffs Bruce and Les Kepley, shareholders in A Technological Advantage, Inc. (ATA), that Defendant Gerald Lanz's threat to sell his restricted share in ATA stock to

_____

[*] The Honorable George Caram Steeh III, United States District Judge for the Eastern District of Michigan, sitting by designation.

one of its competitors was an anticipatory breach of their Investors Rights Agreement (IRA). The Kepleys sued in state court, alleging that Lanz's threat forced them to sell their shares of stock at a price lower than fair market value. Lanz removed the case to federal court and filed a motion to dismiss based on lack of personal jurisdiction, res judicata, and forum non conveniens. The district court, sua sponte, dismissed the case under the "shareholder standing rule" after determining that any damage was done to ATA and any injury the Kepleys suffered was derivative. The Kepleys appeal the district court's ruling. For the following reasons, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

In 1994, Les Kepley incorporated ATA, a Kentucky corporation that provides post-secondary education services. Bruce and Les Kepley, brothers and residents of Kentucky, owned approximately 30% of ATA's issued and outstanding capital stock. About ten years later, Gerald Lanz, a Florida resident, became an investor in ATA when he bought one share of Series A Convertible Preferred Stock in the corporation and a right to purchase common stock. At the time of the purchase, Lanz, ATA, and its shareholders entered into the IRA, agreeing to restrict the sale of certain stock—including the share owned by Lanz—and prohibiting the sale of restricted shares to competitors of ATA.

On May 14, 2010, the Kepleys received notification that Lanz sought to sell his restricted share and his right to purchase additional shares of common stock to Crimson Aero Holdings Corporation (Crimson), a competitor of ATA, for the proposed price of $2,799,000. Relying on the agreement made by Lanz, the Kepleys filed suit in state court seeking a declaratory judgment that the proposed sale was prohibited by the IRA and requesting that the sale be voided if it had taken place. On June 9, the Kepleys voluntarily dismissed "the sole claim alleged" in their declaratory judgment action with prejudice.

The Kepleys then filed another suit in state court, alleging that Lanz's attempt to sell his stock "breached and/or anticipatorily breached" the IRA. They contended that in response to their objection to the sale, Crimson's president told them that they could not afford the Lanz shares and could not "fund litigation-we can" and that Crimson would "shut it down or squeeze them out." The Kepleys alleged that they were forced to sell Crimson their shares of capital stock in ATA at a value much lower than fair market value. After they sold all their shares in ATA to Crimson, Lanz did not complete the sale of his stock and remained a shareholder in ATA, 30% of which Crimson then owned. The Kepleys sought the difference between the sale price and the fair market value of the shares as damages.

Lanz removed the state court case to federal court and filed a motion to dismiss, arguing that he was not subject to personal jurisdiction in Kentucky; that the Kepleys' lawsuit was barred by the doctrine of res judicata; and that the doctrine of forum non conveniens required dismissal. The district court granted the motion, but on different grounds. The court, sua sponte, determined that the Kepleys lacked standing to bring their claim because the alleged breach of the IRA by Lanz harmed the corporation and was therefore a derivative claim. Although recognizing that an exception to this general rule exists when the shareholder suffers an injury that is "separate and distinct" from that suffered by the corporation, the court found the exception inapplicable. It determined that the injury alleged by the Kepleys amounted to diminution in stock value, was suffered by the corporation, and was only derivatively shared by the Kepleys. The Kepleys' motion to vacate the district court's order pursuant to Federal Rule of Civil Procedure 59(e) was denied on the same grounds.

## II. ANALYSIS

### A.      Standard of Review

Although Lanz sought dismissal on other grounds, the district court dismissed for lack of standing. Standing "goes to [a c]ourt's subject matter jurisdiction," *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007); therefore, this

court "review[s] de novo a district court's dismissal of a case for lack of standing . . . under Fed. R. Civ. Proc. 12(b)(1)." *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008).

Because this is a diversity case, we must also review the substantive law applied by the district court. In diversity cases, a federal court must rely upon the substantive law of the forum state. *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). A federal court exercising diversity jurisdiction must "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (internal quotation marks omitted). If the issue has not been decided, a federal court "must 'anticipate how the relevant state's highest court would rule'" and may rely on the state's intermediate appellate court decisions, along with other persuasive authority, in making this determination. *Id.* (quoting *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)). We review the district court's application of state law in a diversity case de novo. *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 624 (6th Cir. 2008).

**B.        Direct and Derivative Claims**

The dispositive question is whether the Kepleys' claim is direct or derivative, and it must be answered by looking at the law in the state of incorporation. *See Casden v. Burns*, 306 F. App'x 966, 974 (6th Cir. 2009). ATA is incorporated in Kentucky, and both parties agree that Kentucky law is applicable. It is undisputed that the Kentucky Supreme Court has yet to render a decision articulating a particular test to be applied in determining whether a claim is direct or derivative under these circumstances.

The Kepleys correctly note that the district court failed to undertake an *Erie* analysis of Kentucky law. Such an analysis, they argue, reveals that Kentucky's highest court would apply the Delaware Supreme Court's test to determine whether a claim is direct or derivative: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson,*

*Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).  The Kepleys note that in the context of addressing whether a breach of fiduciary claim could be brought directly or derivatively, a federal district court in Kentucky cited *Tooley* favorably and also recognized that Kentucky appellate courts have relied upon Delaware's courts as leading authorities on the subject of corporate law.  *See 2815 Grand Realty Corp. v. Goose Creek Energy, Inc.*, 656 F. Supp. 2d 707, 716 (E.D. Ky. 2009).

Lanz argues that the district court did not err in applying the "separate and distinct" injury standard.  He correctly contends that the Kentucky Court of Appeals has applied some form of the test used by the district court.  *See Sahni v. Hock*, 369 S.W.3d 39, 47 (Ky. Ct. App. 2010) (finding that shareholder "failed to demonstrate a specific injury to herself outside the diminution in value of [the corporation's] stock").  Another decision by the Kentucky Court of Appeals, rendered shortly after briefing was concluded in this case, applied the same test.  *See Watkins v. Stock Yards Bank & Trust Co.*, __ S.W.3d __, 2012 WL 2470692, at *5 (Ky. Ct. App. June 29, 2012).

There is little substantive distinction between the tests proposed by the parties.  *Cf. Remora Invs., L.L.C. v. Orr*, 673 S.E.2d 845, 848 (Va. 2009) (noting that regardless of the test applied, the claims were derivative).  The question of whether the shareholder's injury is "separate and distinct" from that of the corporation's is essentially the same inquiry as the first step of Delaware's *Tooley* test, though the second step also informs the analysis.  Under either test, we find the focus to be on (1) the nature of the duty owed and (2) the nature of the injury suffered. Therefore, the district court did not err in its choice of law.

We disagree, however, with the district court's application of these principles in determining that the Kepleys' injury was not "separate and distinct" from any injury suffered by ATA.  Lanz's duty under the IRA not to sell his stock was owed to both ATA and the Kepleys, but this does not foreclose a finding that the Kepleys' claim may be asserted directly against Lanz.  The nature of the injury alleged here is one that, if proven, was suffered only by the Kepleys.  The Kepleys allege that Lanz and his associates used the threat of the sale of his preferred—and restricted—share, along with

the threat that opposition to the sale would result in either costly litigation or being "squeezed out," to force *the Kepleys* to sell *their* 30% ownership interest in the company they created. There is nothing in the record to suggest that any of the other shareholders sold their stock or were pressured to do so. It also appears that after the Kepleys were forced out, Lanz never carried out his threat to sell his stock. Thus, by selling their stock for less than it was worth, the Kepleys suffered an injury that was not suffered by either the corporation or the other shareholders. Their injury is therefore "separate and distinct."

A policy rationale—the familiar repugnance for a wrong without a remedy—also supports a finding that the Kepleys have standing to bring a direct claim. In Kentucky, the sale of the Kepleys' stock means that they are no longer shareholders and do not have a right to bring a derivative claim. *See, e.g.*, *Bacigalupo v. Kohlhepp*, 240 S.W.3d 155, 158 (Ky. Ct. App. 2007) (noting that following a merger, the former shareholders lack standing to bring a derivative claim because they "would receive no benefit from any corporate recovery"). Thus, if the complaint were dismissed on the grounds articulated by the district court, there would be a loss suffered that could not be addressed either individually or derivatively—the Kepleys would have no direct claim, yet by selling their stock in an effort to minimize their damages, they could no longer bring a derivative claim. Moreover, even if the Kepleys could bring a derivative claim, Lanz and Crimson—whose threat to sell and purchase the stock, respectively, caused the alleged harm to the Kepleys—would stand to benefit from the recovery and the Kepleys would not. *Cf. Kollman v. Cell Tech Int'l, Inc.*, 279 P.3d 324, 332 (Or. Ct. App. 2012) (accepting plaintiff's argument that if his breach of fiduciary duty claim were treated as derivative, the person "who ultimately obtained ownership of more than 90 percent of the shares of the corporation[] would be the primary beneficiary of the recovery of damages," even though that person was the "primary beneficiary of [the] wrongdoing in the first place"). Thus, the Kepleys' allegations fit squarely within key purposes underlying direct claims.

At this point in the litigation, "[t]he facts alleged by the plaintiff must be accepted as true." *VIBO Corp. v. Conway*, 669 F.3d 675, 683 (6th Cir. 2012).  The Kepleys' complaint alleges that they were parties to the IRA that Lanz threatened to breach and they were placed in the position of having to sell their shares or be "squeezed out."  The Kepleys properly contend that they suffered a separate and distinct injury as a result of Lanz's breach of the IRA.  *Cf. Kollman*, 279 P.3d at 336 (affirming judgment on plaintiff's direct claim because "the series of events culminating in the breach of fiduciary duty here were not intended to—and did not—equally harm all shareholders").  We find the Kepleys have standing to bring a direct claim and reverse the district court's sua sponte dismissal of their claim against Lanz.

## C.      Claim Preclusion

Lanz argues that the Kepleys' current suit should be dismissed on grounds of res judicata, or claim preclusion, because it arises out of the same set of facts as their voluntarily dismissed declaratory judgment action.   Under Kentucky law, claim preclusion bars subsequent litigation when the following three elements are established: "(1) identity of the parties, (2) identity of the causes of action, and (3) resolution on the merits." *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 371 (Ky. 2010).  This court, applying Kentucky law, previously held that a suit for declaratory relief did not have preclusive effect on a plaintiff's later claim for tortious interference with prospective business relations. *See Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 304-05 (6th Cir. 2011).  Although the parties briefed and argued the claim preclusion issue before this court, the district court did not have the opportunity to address the doctrine's applicability because it determined that the Kepleys lacked standing.  We reverse that holding and remand the case to allow the district court to consider the matter of claim preclusion in the first instance.

## III.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court and **REMAND** for further proceedings consistent with this opinion.