RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0084p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

ANDREA PERRY, individually and on behalf of all other
Ohio residents similarly situated,

          *Plaintiff-Appellant*,

    *v*.

ALLSTATE INDEMNITY COMPANY, et al.,

          *Defendants-Appellees*.

No. 18-4267

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:16-cv-01522—Christopher A. Boyko, District Judge.

Decided and Filed:  March 18, 2020

Before:  MOORE, COOK, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Patrick J. Perotti, DWORKEN & BERNSTEIN CO., LPA, Painesville, Ohio, for
Appellant.  Mark L. Hanover, DENTONS US LLP, Chicago, Illinois, Gregory R. Farkas,
FRANTZ WARD LLP, Cleveland, Ohio, for Appellees.  William F. Merlin, Jr., MERLIN LAW
GROUP, P.A., Tampa, Florida, Wystan M. Ackerman, ROBINSON & COLE LLP, Hartford,
Connecticut, Mark A. Johnson, Rodger L. Eckelberry, BAKER & HOSTETLER LLP,
Columbus, Ohio, for Amici Curiae.

    MOORE, J., delivered the opinion of the court in which COOK, J., joined.  READLER,
J. (pp. 9–22), delivered a separate opinion concurring in part and dissenting in part.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  When Andrea Perry's home sustained water damage, she made a claim under her Allstate insurance policy for the cost of repairs or replacement.  Both Perry and Allstate agree that the damage is covered under the policy, and they agree on the total estimated cost.  The single issue they dispute is whether Allstate is entitled to deduct the cost of labor as part of calculating "depreciation" to arrive at its net payment.  Ohio law, fortunately, provides a simple answer.  When an insurance policy is ambiguous, Ohio law requires courts to interpret the policy strictly against the insurer, so long as the insured's interpretation is reasonable.  We hold, as many have, that Perry's reading of the term "depreciation" is a reasonable interpretation of an ambiguous policy, and thus that Allstate may not include the cost of labor in calculating depreciation under its policy.  We accordingly **REVERSE** the judgment of the district court dismissing this action and **REMAND** for further proceedings consistent with this opinion.

## I.  BACKGROUND

Perry's home suffered water damage and required extensive repairs.  R. 1-1 (Compl. at 4, ¶¶ 9–10) (Page ID #58).  To pay for the damage, she filed a claim with her insurer, Allstate Indemnity Company.  *Id.* at 4, ¶¶ 11–13 (Page ID #58).  Allstate did not dispute that Perry's home was seriously damaged, or that it was required to pay for repairs or replacement.  *Id.* at 4, ¶ 14 (Page ID #58).  And the parties agree that the total estimated cost to repair or replace Perry's home is $32,965.09.  *Id.* at 4, ¶ 17 (Page ID #58).  After making deductions for "depreciation," Allstate provided Perry with a net payment of $28,394.74.  *Id.* at 5, ¶ 23 (Page ID #59).  The source of the disagreement is Allstate's deduction of labor costs as part of the calculation of depreciation.[1]

---

[1]For simplicity, we define labor costs here to include contract overhead and profit ("CO&P").  *See* Appellant Br. at 8–9 (discussing labor and CO&P separately).

Perry's payout was calculated on an "actual cash value" ("ACV") basis.  Her Allstate insurance policy provides, "If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis.  This means there may be a deduction for depreciation."  R. 16-2 (Insurance Policy at 16) (Page ID #183).  The policy does not define "depreciation."

Allstate contends that "depreciation" must account for the cost of both materials *and labor*.  Perry does not dispute that "depreciation" includes the cost of materials, but claims that the term "depreciation" is ambiguous with respect to labor costs.  The district court accepted Allstate's definition and granted its motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Perry timely appealed.

## II. STANDING

As an initial matter, Allstate argues that Perry has standing only to pursue her claims against Allstate Indemnity Company, the division that issued her insurance policy.  Perry concedes that the remaining Allstate entities are not parties to the policy at issue in this case.  Therefore, Perry lacks standing to pursue her claims against those entities because her injury is not traceable to them.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61 (1992).  It does not matter that Perry brought this suit as a putative class action on behalf of policyholders of the other Allstate entities.[2]  The rule works the other way around.  "[P]otential class representatives must demonstrate 'individual standing vis-à-vis the defendant; [they] cannot acquire such standing merely by virtue of bringing a class action.'"  *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 582 (6th Cir. 2016) (quoting *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998)).  As Perry is the only named plaintiff in the action, no other named plaintiffs

---

[2]Perry claims otherwise by reference to the "juridical link" doctrine, a sparingly applied class-certification doctrine that arose out of the Ninth Circuit's decision in *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973).  Under the juridical-link doctrine, a plaintiff without a cause of action against each defendant in a class action can nevertheless meet Federal Rule of Procedure 23's class-certification requirements (and perhaps, Perry argues, Article III standing) if the case "involve[s] a state statute or uniform policy being applied statewide by the defendants."  *Thompson v. Bd. of Educ. of Romeo Cmty. Sch.*, 709 F.2d 1200, 1205 (6th Cir. 1983); *see also Payton v. Cty. of Kane*, 308 F.3d 673, 678–82 (7th Cir. 2002) (invoking the juridical-link doctrine where a uniform state policy regarding bail-bond fees was at issue).  No such statute or statewide policy is at issue here.

exist to create standing against the remaining Allstate entities.  On remand, the district court should dismiss without prejudice Perry's claims against the remaining Allstate entities.

### III.  DEPRECIATION OF LABOR COSTS

Now we turn to the merits.  The question on appeal is whether Perry's insurance policy permits Allstate to depreciate labor costs in calculating ACV.  Allstate argues that it was entitled to depreciate labor costs, in addition to the cost of materials, in calculating ACV.  Perry says the policy is ambiguous.  The district court sided with Allstate and granted Allstate's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  We review de novo the decision to dismiss Perry's complaint.  *See Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 318 (6th Cir. 2017).

Neither the insurance policy nor the Ohio Administrative Code defines "depreciation."  And the Ohio Supreme Court has not weighed in on this question.  Thus, "depreciation" is left undefined and, Perry argues, is ambiguous.  We agree that the policy is ambiguous and hold that Allstate improperly depreciated labor costs in calculating ACV.

In cases where our jurisdiction is based on diversity, we apply the substantive law of the state in which the district court sits according to the decisions of the state's highest court.  *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013).  Our case arises under Ohio law, so we must look to the decisions of the Ohio Supreme Court.  Where, as here, the Ohio Supreme Court has not spoken on an issue, we look to the decisions of its lower courts, to the extent they are persuasive, to predict how the Ohio Supreme Court would decide the issue.  *Id.*; *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985).  The results of that search are inconclusive.  Although two Ohio appellate courts have held in published decisions in different contexts that labor costs are not depreciable, two other appellate courts came out the opposite way in unpublished decisions, and no Ohio appellate court has addressed depreciation in this context.  *See Ohio Edison Co. v. Royer*, 92 N.E.3d 912, 917 (Ohio Ct. App. 2018) (excluding labor costs from depreciation of damages in the context of a tort claim for destruction of a utility pole); *Illuminating Co. v. Wiser*, 114 N.E.3d 240, 246 (Ohio Ct. App. 2018) (same); *Ohio Edison Co. v. Soule*, No. S-17-052, 2018 WL 6016743, at *10 (Ohio Ct. App. Nov. 16, 2018) (unpublished) (finding that labor costs

were depreciable in the context of a tort claim for destruction of a utility pole); *Helfrich v. Helfrich*, No. 97APF08-975, 1998 WL 63528, at \*3 (Ohio Ct. App. Feb. 10, 1998) (unpublished) (stating that separating labor costs from material costs for the replacement of concrete in a child support case was "fundamentally unsound"). The only Ohio courts to have addressed the precise question of depreciating labor costs in calculating ACV are two trial courts. They came to opposite conclusions. *See Ingram v. Liberty Ins. Corp.*, No. 16CV005538, at p. 6 (Ohio Ct. Com. Pl. Mar. 13, 2018) (unpublished); *Parker v. Am. Family Ins. Co.*, No. CV-16-865773, at pp. 6–8 (Ohio Ct. Com. Pl. June 13, 2019) (unpublished). We simply have no clear answer from Ohio law on whether labor costs are depreciable in calculating ACV. We therefore turn to Ohio's general rules of contract interpretation and insurance law.

Under Ohio law, if an insurance policy is ambiguous, the policy is construed strictly against the insurer. *Andersen v. Highland House Co.*, 757 N.E.2d 329, 332–33 (Ohio 2001). "[I]t will not suffice for [the insurer] to demonstrate that its interpretation is more reasonable than the policyholder's." *Id.* at 333 (quotation omitted). Instead, "in order to defeat coverage, the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is *the only one* that can fairly be placed on the language in question." *Id.* at 332 (quotation omitted) (emphasis added). If the policy is ambiguous, and the insured's interpretation is reasonable, the insured prevails.

We recently held in *Hicks v. State Farm Fire & Casualty Co.*, a case arising under Kentucky law, that nearly identical policy language was ambiguous. 751 F. App'x 703 (6th Cir. 2018).[3] Under Kentucky law, policies are ambiguous if they are susceptible to more than one reasonable interpretation. *Id.* at 709 (citing *Bituminous Cas. Corp. v. Kenway Contracting Inc.*, 240 S.W.3d 633, 641 (Ky. 2007)). "A layperson confronted with State Farm's policy," we held, "could reasonably interpret the term depreciation to include only the cost of materials." *Id.* Like

---

[3]That *Hicks* was decided under Kentucky law rather than Ohio law makes no difference because Kentucky's and Ohio's methodologies for interpreting insurance policies are identical in all material respects. In addition to construing an ambiguous policy strictly against the insurer, a policy is ambiguous under both Kentucky and Ohio law if the meaning of a term is not clear on the policy's face. *See Bidwell v. Shelter Mut. Ins. Co.*, 367 S.W.3d 585, 588–89 (Ky. 2012); *Ohio N. Univ. v. Charles Constr. Servs., Inc.*, 120 N.E.3d 762, 766 (Ohio 2018). Kentucky and Ohio courts decide whether a term is ambiguous based on its plain meaning. *See Pryor v. Colony Ins.*, 414 S.W.3d 424, 430 (Ky. Ct. App. 2013); *Charles Constr. Servs.*, 120 N.E.3d at 766.

Ohio law, Kentucky law dictates that an ambiguous insurance policy must be construed strictly against the insurer and in favor of the insured, so long as the insured's proposed interpretation is reasonable. *See Bidwell v. Shelter Mut. Ins. Co.*, 367 S.W.3d 585, 588–89 (Ky. 2012). Therefore, we interpreted "depreciation" to exclude labor costs. *Hicks*, 751 F. App'x at 710.

As here, the insurance policy in *Hicks* did not define "depreciation." Neither did the Kentucky Administrative Regulations. But, like here, the regulations did define ACV. *See* 806 KY. ADMIN. REGS. 12:095(9)(2) (2007). Kentucky's regulations define ACV as "replacement cost of property at the time of the loss less depreciation, if any." *Id.* Ohio's regulations define ACV as "replacement cost of property at the time of loss, including sales tax, less any depreciation." OHIO ADMIN. CODE § 3901-1-54(I)(2)(a) (2016). Allstate makes much of the fact that the Kentucky regulations say "depreciation, if any," while the Ohio regulations say "any depreciation." In its view, "any depreciation" means all types of depreciation. We read "any depreciation" as simply saying "whatever depreciation there happens to be." Allstate's interpretation just begs the question of what "depreciation" means in the first place.[4]

Moreover, Perry's interpretation—that in calculating ACV depreciation does not include labor costs—has been recognized as reasonable by numerous state and federal courts, including our own, because depreciation traditionally refers to value lost from physical wear and tear. *See*

---

[4]Analyzing the ACV definition as a whole, the parties debate whether a "sales tax" can apply to services or only material goods, and thus whether depreciation can include labor costs if a sales tax is limited to material goods. *See* OHIO ADMIN. CODE § 3901-1-54(I)(2)(a) (2016) (defining ACV as "replacement cost of property at the time of loss, including sales tax, less any depreciation"). Whatever the answer is, the meaning of "sales tax" does not solve our problem because "including sales tax" refers back to the "replacement cost of property," not depreciation. *See id.*

The parties also disagree over the effect of their respective interpretations of "depreciation" on a neighboring provision of the code. *See* § 3901-1-54(I)(2)(b). That provision states:

If the insured's interest is limited because his property has nominal or no economic value, or a value disproportionate to replacement cost less depreciation, the insurer is not required to comply with paragraph (I)(2)(a) of this rule regarding the determination of actual cash value. However, the insurer shall provide upon the insured's request, a written explanation of the basis for limiting the amount of recovery along with the amount payable under the policy.

*Id.* Perry says this provision accounts for a scenario where a windfall would issue to the insured if the insurer paid for repairs that include labor costs. Thus, depreciation must not include labor costs, or else this windfall-prevention provision would have no purpose. Allstate, however, says that this provision protects the insurer from costly repairs resulting from practical difficulties, like building on rocky landscapes, that exceed the value of the replacement itself. In those situations, an insured would be incentivized to destroy the structure to obtain an enormous windfall, if not for this provision. Both readings are reasonable to our eye and do not clear up the ambiguity.

*Hicks*, 751 F. App'x at 709–11 (collecting cases). Though a slim majority of courts may have gone the other way, *see id.* (collecting cases), that does not matter for our purposes because we do not ask whose reading is "more reasonable." *Andersen*, 757 N.E.2d at 333. Like the insurer in *Hicks*, Allstate "could have removed any ambiguity by simply writing its policies to expressly include labor depreciation when calculating ACV." *See Hicks*, 751 F. App'x at 709. But it didn't, and under Ohio law, an ambiguous policy with competing reasonable interpretations must be construed in favor of the insured. *Andersen*, 757 N.E.2d at 332–33.

The Tennessee Supreme Court, one of the high State courts in our circuit, has performed this same analysis and construed the policy against the insurer. *See Lammert v. Auto-Owners (Mut.) Ins. Co.*, 572 S.W.3d 170, 178–79 (Tenn. 2019). The policies at issue in that case defined ACV as "the cost to replace damaged property with new property of similar quality and features reduced by the amount of depreciation applicable to the damaged property immediately prior to the loss." *Id.* at 171. The policies did not define "depreciation." *See id.* To decide whether "depreciation" could reasonably be read more than one way, the Tennessee Supreme Court summarized the split between courts across the country over whether "depreciation" can or should be read to include labor costs, including our decision in *Hicks*. *See id.* at 175–78. Against that backdrop, it determined that both interpretations were reasonable and accordingly that the term "depreciation" was ambiguous. *Id.* at 178–79. Because depreciation traditionally refers to lost value from the physical deterioration of the structure, "it is reasonable that a homeowner would understand that depreciation would only be applicable to material goods that can age and experience wear and tear." *Id*. at 178. The insurer's interpretation relied on a technical meaning of "depreciation," not its "ordinary sense," and its interpretation was "not evident on the face of either policy." *Id*. at 179. "In the end," the court held, "this case turns on our standard for interpreting insurance contracts because both parties have presented plausible interpretations of the policies." *Id.* at 178. Like Kentucky and Ohio, Tennessee construes ambiguous terms in an insurance policy strictly against the insurer. *See id.* at 178–79. "Therefore, construing the policy language in favor of the insured, depreciation can only be applied to the cost of materials, not to labor costs." *Id.* at 179.

Because Perry's interpretation of "depreciation" is a fair reading of an ambiguous term, her interpretation prevails against the insurer.**[5]** We accordingly hold as a matter of law that it was improper for Allstate to depreciate labor costs to arrive at its net payment to Perry for the damage to her home.

## IV. CONCLUSION

We **REVERSE** the district court's judgment of dismissal and **REMAND** for further proceedings consistent with this opinion.

---

**[5]**Allstate's argument that Perry has not successfully alleged a breach of contract claim because it was entitled to deduct labor costs as "depreciation" fails for the same reason. *See* Appellee Br. at 34–36.

---

### CONCURRING IN PART AND DISSENTING IN PART

---

CHAD A. READLER, Circuit Judge, concurring in part and dissenting in part. "What a long, strange trip it's been" through the federal courts, Allstate must be thinking. Grateful Dead, *Truckin'*, *on* American Beauty (Warner Bros. 1970). In the district court, Allstate moved to dismiss Andrea Perry's complaint on the grounds that Allstate's reading of the insurance policy at issue was the only reasonable interpretation. Allstate's was the lone motion before the district court; Perry did not move for preliminary relief, *see* Fed. R. Civ. Proc. 65, did not move for judgment on the pleadings, *see* Fed. R. Civ. Proc. 12(c), and did not move for summary judgment, *see* Fed. R. Civ. Proc. 56. The district court granted Allstate's motion and entered judgment for Allstate. Perry appealed. Today, the Court reverses the dismissal decision in favor of Allstate. Fair enough. Yet the Court then proceeds effectively to enter judgment for Perry, declaring that Perry's "interpretation prevails against the insurer." Quite a turn of events for Allstate, when Perry has never asked a single court, neither the district court nor this one, for that relief.

I agree with much of the majority opinion, including its standing analysis and the conclusion that, when viewed at this threshold dismissal stage, Perry's interpretation of the policy language is not unreasonable, meaning that Allstate is not entitled to dismissal. But I am perplexed by the notion that reversing a dismissal decision also requires us to decide the case in Perry's favor, in the absence of further proceedings, including developing the record.

All agree that in a policy dispute between an insurer and an insured, Ohio insurance law requires courts to put a finger on the scale in favor of the insured. Quoting the Ohio courts: "[T]o defeat coverage, the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question." *Andersen v. Highland House Co.*, 757 N.E.2d 329, 332 (Ohio 2001) (internal quotations omitted). It follows that, to prevail on a motion to dismiss, the insurer must show that the insured could never establish that her interpretation is reasonable. *Richelson v. Liberty Ins. Co.*, --- F. App'x ---, 2020 WL 113904, at *3 (6th Cir. Jan. 6, 2020).

But that does not mean that *unless* the insurer can prevail on a motion to dismiss, *the insurer loses the case*. Yet that is the rule the majority opinion attempts to write for the Ohio courts.

Ohio law says otherwise. When each side to an Ohio insurance dispute presents a reasonable reading of the policy, the dispute moves past the threshold dismissal stage, with the issue typically resolved at summary judgment. *See, e.g.*, *Andersen*, 757 N.E.2d at 332; *Williams Powell Co. v. Onebeacon Ins. Co.*, 75 N.E.3d 909, 913 (Ohio App. 1st Dist. 2016) (DeWine, J.); *Safe Auto Ins. Co. v. Semenov*, 947 N.E.2d 1267, 1270–71 (Ohio App. 12th Dist. 2011); *Cincinnati Ins. Co. v. ACE INA Holdings, Inc.*, 886 N.E.2d 876, 883–84 (Ohio App. 1st Dist. 2007); *Water Works Supplies Inc. v. Grooms Constr., Co., Inc.*, No. 04CA12, 2005 WL 674481, at *4–5 (Ohio App. 4th Dist. Mar. 14, 2005); *Boso v. Erie Ins. Co.*, 669 N.E.2d 47, 49–52 (Ohio App. 10th Dist. 1995); *Gottlieb & Sons, Inc. v. Hanover Ins. Co.*, No.64559, 1994 WL 144539, at *5 (Ohio App. 8th Dist. Apr. 21, 1994). As demonstrated by this uniform line of cases, Ohio law affords parties to an insurance coverage dispute the opportunity to present extrinsic evidence of custom and usage, industry practice, and the like, any of which may inform the ultimate interpretive question. *See, e.g.*, *Andersen*, 757 N.E.2d at 332 (considering extrinsic evidence including insurance industry practice surrounding a specific exclusion in a policy before concluding, at summary judgment, that the exclusion could reasonably be read not to cover the insured's claim); *Cincinnati Ins. Co.*, 886 N.E.2d at 883–84 (allowing parties to present expert testimony related to industry practice that informed the ultimate interpretation of the contract at summary judgment); *Boso*, 669 N.E.2d at 49–52 (looking to extrinsic evidence, including affidavits submitted by the parties, in determining the scope of policy coverage). We have followed the same path when interpreting Ohio contract and insurance law. *Bondex Intern., Inc. v. Hartford Acc. & Indem. Co.*, 667 F.3d 669, 680 (6th Cir. 2011) (acknowledging that "[u]nder Ohio law, we may consider extrinsic evidence to interpret . . . the express language" of an insurance policy) (internal quotations and citations omitted). And courts and judges outside Ohio have left the ultimate interpretation of ACV policy language for resolution at summary judgment, including a judge of this Court. *Graves v. Am. Family Mut. Ins. Co.*, 686 F. App'x 536, 539–40 (10th Cir. 2017); *Riggins v. Am. Family Mut. Ins. Co.*, 281 F. Supp. 3d 785, 789 (W.D. Mo. 2017); *Brown v. Travelers Cas. Ins. Co. of Am.*, No.15-50-ART, 2016 WL 1644342,

at \*2–4 (E.D. Ky. Apr. 25, 2016) (Thapar, J.) (concluding that discovery was necessary to determine whether plaintiff's claims were covered by the policy in question).

On remand, the parties may well bring to bear additional interpretive tools. Discovery or other means may conclusively reveal whether Allstate's view ultimately is the only reasonable one. For instance, the appellate briefing identifies two resources—one administrative, one industry-related—that demonstrate what light discovery might shed on this interpretive question. The first is a Market Conduct Examination performed by the Ohio Department of Insurance. The second is a bulletin from Fire, Casualty, & Surety, a publishing name for the National Underwriter Company. As these resources are not part of the pleadings, we typically may not consider them in reviewing a granted motion to dismiss. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). But information regarding industry practice, once properly part of the record, can play a crucial role in resolving claims like Perry's.

The majority opinion cites no Ohio cases saying otherwise. Indeed, it cites no Ohio cases at all in the relevant section. Instead, the majority opinion relies on cases that interpret the law of two other states to resolve contract interpretation issues at the motion to dismiss stage. One is a decision of this Court, which interpreted Kentucky law. *See Hicks v. State Farm Fire & Cas. Co.*, 751 F. App'x 703 (6th Cir. 2018). The other is *Lammert v. Auto-Owners Ins. Co.*, 572 S.W.3d 170 (Tenn. 2019), which interpreted Tennessee law. While these cases resolved the substantive ACV question before discovery was complete (in *Hicks*, over a thoughtful dissent), they did so in a unique posture. In *Hicks*, we did so only after that specific question of state law was certified for appeal with the consent of all parties and the district court, 751 F. App'x at 705. In *Lammert*, the issue was teed up in the form of a certified question of law to the Tennessee Supreme Court. In these cases, in other words, the parties (with the district court's approval) agreed to submit the cases for resolution of the ultimate legal question without the benefit of any extrinsic evidence that might be developed through discovery. The same cannot be said for Perry and Allstate. Perry's appeal comes to us through a more customary procedural path, Allstate has not waived any opportunity for discovery, and Perry has not sought any relief other than reversal of the district court's threshold dismissal of her case.

The majority opinion thus rests on the unusual conclusion that because the policy language is susceptible to two meanings, making it "ambiguous," Perry's reading is not unreasonable, which concludes the inquiry. Not just for today, but for all time. The majority opinion rejects out of hand the notion that any ambiguity at this first blush might be clarified later, that extrinsic and other evidence might inform the debate during discovery and further proceedings, and that, when viewed in that more informed light, one side's reading of the policy language becomes the only reasonable one. Or, to use the majority opinion's phrasing, an ambiguity in the policy language can be clarified, meaning it is no longer ambiguous. That is the procedure the Ohio courts follow in the insurance context: "[W]here a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). And while ambiguities are construed against the insurer, this rule cannot be used to "provide an unreasonable interpretation of the words of the policy." *Id.* at 1262. Whether the insured's interpretation is reasonable may well be clarified through extrinsic evidence.

Evidence developed in discovery may allow Allstate to resolve any ambiguity in the policy language. But the majority opinion cuts that opportunity off at the pass. It denies Allstate the chance to develop evidence to overcome Ohio's insured-friendly interpretation standard, and instead enters judgment for Perry at the threshold stage—even when she never sought that relief. Perry, in that respect, apparently was quite modest. It is difficult to say the same for the majority opinion.

Instead of declaring that Perry "prevails," I would allow the case to continue in the district court on remand, allowing the parties and the district court to guide further proceedings. That is the clear instruction from the Ohio courts. Of course, today's decision has no effect on the Ohio courts, and so it may be nothing more than a moment in time for all but the parties here. *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) ("[W]e recognize that [state] courts are the ultimate authority on [their own] law."). Even then, I find it exceedingly difficult to square this outcome with the Ohio law we are bound to apply. *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) ("In diversity cases, a federal court must rely upon the substantive law of the forum

state.").  Instructed by that sovereign's law, I would allow parties to contest the matter to the final whistle, rather than calling the game at the half.

Were I to write the contract interpretation section of the majority opinion, it would read something like this:

### At This Stage, Allstate Has Not Established That Perry's View That Labor Costs Are Not Depreciable Under The Insurance Policy Is Unreasonable.

The district court dismissed Perry's complaint against Allstate after concluding that Perry's view—that the policy did not permit labor-cost depreciation—was unreasonable.  We review the district court's dismissal of the complaint *de novo*.  *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017).  With respect to any factual disputes, while few if any come to mind, we will assume Perry's version of the facts at this stage of the proceeding.  *Grawey v. Drury*, 567 F.3d 302, 310 (6th Cir. 2009).

1.  Had Allstate's insurance policy expressly defined ACV, we would give those terms their ordinary and plain meaning as a way to guide our interpretation of the policy.  *See Ohio N. Univ. v. Charles Constr. Servs., Inc.*, 120 N.E.3d 762, 766 (Ohio 2018) (holding that contractual terms are interpreted in light of the full contents of the policy).  Yet Allstate's policy does not offer that express definition.  Thus, we must decide, against the backdrop of Ohio law, whether labor costs are depreciable under the policy for purposes of measuring ACV recovery.  *Kepley*, 715 F.3d at 972.

State courts, of course, are the arbiters of state law.  *Id.*  In instances of diversity jurisdiction, however, we are sometimes asked to resolve important state-law questions, even from our federal perch.  To answer those questions, we customarily turn to the state courts, starting with the decisions of the relevant state's high court, here the Ohio Supreme Court.  *Id.* Today, however, that inquiry only gets us so far.  To our eye, the Ohio Supreme Court has not yet addressed whether labor costs are depreciable in ACV contracts.  And when the district court asked the Ohio Supreme Court to take up the issue here, it declined the invitation.

Absent that express direction, we must make our best estimate of how the Ohio Supreme Court *would* answer today's question, if it chose to do so.  *Id.* (quoting *Savedoff v. Access Grp.,*

*Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) ("If the issue has not been decided, a federal court must anticipate how the relevant state's highest court would rule . . . .") (internal quotations omitted)). In making that assessment, we cast a wide net, employing "all relevant data" as our guide. *Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436, 440 (6th Cir 2014) (quoting *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995)). That relevant data includes opinions from the state's lower courts. *Kepley*, 715 F.3d at 972. It also includes applicable statutory or regulatory provisions, academic and expert commentaries, restatements of law, and the rules of other jurisdictions. *See Garden City*, 55 F.3d at 1130.

At the start, it bears noting that numerous courts have tackled the issue in one form or another, with mixed results. Surveying that case law, the weight of authority aligns with Allstate's view that labor costs are depreciable. But there is considerable case-law support for Perry's view as well. Although not dispositive, that split of authority is nonetheless informative. After all, at this threshold stage, Perry's claim fails only if her interpretation of ACV, one already adopted by some courts, could never be deemed reasonable. *Andersen*, 757 N.E.2d at 332 ("[T]he insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the *only one* that can fairly be placed on the language in question.") (citations omitted) (emphasis added).

2. To help fill the interpretive gap, we turn to Ohio law, starting with the Ohio Administrative Code. Unlike the policy in question, the Administrative Code does provide a definition of ACV: "The insurer shall determine actual cash value by determining the replacement cost of property at the time of loss, including sales tax, less any depreciation." Ohio Admin. Code § 3901-1-54(I)(2)(a). Yet as with the policy language, this regulatory provision similarly fails to establish conclusively whether labor is depreciable in calculating ACV.

Start with the critical phrase "any depreciation." According to Allstate, the word "any" gives the phrase an expansive definition, implying that all elements comprising the value of an insured structure—that is, labor *and* materials—are subject to depreciation. Yes, the word "any" sweeps in a sizeable range of considerations, so much so that, as a matter of Ohio law, it is used interchangeably with the word "all." *Risner v. Ohio Dep't of Nat. Res., Ohio Div. of Wildlife*, 42 N.E.3d 718, 723 (Ohio 2015). But Allstate's argument merely begs today's underlying

question—whether labor is depreciable in the first place. And absent a showing that labor is depreciable as a matter of Ohio law, the word "any" does not do the work Allstate needs, no matter its expansive nature.

How about the term "sales tax," as it is used in the Administrative Code? Here again, we face competing schools of thought. On the one hand, Perry argues that, in Ohio, sales tax is only applicable to tangible goods (and not services), meaning the provision implicitly contemplates only the depreciation of materials (and not labor). Yet on the other hand, Allstate identifies a list of services that are subject to sales tax in Ohio. At this stage, then, how the term "sales tax" informs the debate is uncertain.

We also note language in a companion section of the Administrative Code designed to avoid windfall payments to an insured. That section allows the insurer to employ alternative means in calculating ACV when the standard "replacement cost . . . less any depreciation" method of calculation would result in a "disproportionate" outcome:

> If the insured's interest is limited because his property has nominal or no economic value, or a value disproportionate to replacement cost less depreciation, the insurer is not required to comply with paragraph (I)(2)(a) of this rule regarding the determination of actual cash value. However, the insurer shall provide upon the insured's request, a written explanation of the basis for limiting the amount of recovery along with the amount payable under the policy.

Ohio Admin. Code § 3901-1-54(I)(2)(b). Perry reads this provision to confirm that Ohio's ACV definition must exclude labor depreciation. That is so, she claims, because ACV calculations that exclude labor depreciation sometimes lead to a windfall for the insured, thereby necessitating the alternative process envisioned in § 3901-1-54(I)(2)(b). For example, where labor is not depreciated, an insured structure that has exceeded its useful life will still have an ACV equivalent to the full cost of labor required to rebuild the structure as new. Depending upon the circumstances, the ACV calculation could result in a "disproportionate" payment to the insured. It is that very concern, says Perry, that the Administrative Code's drafters had in mind in providing an alternative basis for calculating ACV recovery.

To illustrate the point, consider a roof installed on a home. Suppose the initial cost of installing the roof is $10,000, split evenly between material and labor costs. Further suppose, for

purposes of deprecation, that the roof has a useful life of ten years.  Under Perry's view, the labor cost is not depreciable, meaning the roof's value will depreciate $500 per year for ten years (10% of the initial $5,000 material cost).  In year eleven, the roof will be fully depreciated.  But its value remains $5,000—the full value of the labor initially required to install it.  And that value will remain in year 20, or year 100 for that matter.

This, says Perry, is where § 3901-1-54(I)(2)(b)'s protection against "disproportionate" or windfall payments to an insured comes in to play.  If an insured claims that her 100-year-old roof is damaged or destroyed and attempts to file a claim, § 3901-1-54(I)(2)(b) provides that the insurer is "not required" to utilize the traditional ACV calculation reflected in § 3901-1-54(I)(2)(a), and can instead employ an alternative formula to compute the roof's value.  Yet Allstate's position, says Perry, eliminates the possibility of such a disparity ever coming to pass, in essence rendering § 3901-1-54(I)(2)(b) a nullity.  That is, following Allstate's interpretation, the $10,000 roof hypothesized above would depreciate $1,000 a year over the roof's ten-year useful life—$500 each year for both labor and material, respectively.  At the beginning of year eleven, the roof would have a value of $0.  The same would be true at year 100, meaning a windfall to the insured could never come to pass.

Allstate, on the other hand, can imagine a scenario where, under its interpretation of ACV, § 3901-1-54(I)(2)(b) would come into play.  In that scenario, the Code section operates to protect the insurer when the cost of repairs makes them economically impracticable or when large payments would encourage bad acts on the part of the ensured.  Consider, for instance, a $2,000 shed built on a rocky landscape, making construction work extremely difficult.  In such a situation, the cost of replacing the shed could well exceed its economic value, encouraging the owner of the shed to burn it down without any intention of rebuilding it, with an eye on receiving an enormous insurance windfall.  It is this concern, Allstate contends, that § 3901-1-54(I)(2)(b) was intended to protect against.

Each side has a point.  The text of Administrative Code § 3901-1-54(I)(2)(a) leaves room for each party's interpretation of the policy at issue.

3.  In the absence of controlling authority from the Ohio Supreme Court, we ordinarily would rely upon relevant Ohio appellate-court decisions to guide our understanding of Ohio law. *See Kepley*, 715 F.3d at 972.  But just as with the Ohio Supreme Court, we are equally unaware of any on-point case law from the Ohio Courts of Appeal.

Stepping back from the insurance setting, the Ohio Courts of Appeals have addressed how to account for the depreciation of labor costs in other contexts.  But those decisions send mixed messages.  Some cases hold that labor costs are depreciable.  *See, e.g.*, *Ohio Edison Co. v. Soule*, No. S-17-052, 2018 WL 6016743, at *10 (Ohio Ct. App. Nov. 16, 2018) (finding that labor costs were depreciable in the utility pole context); *Helfrich v. Helfrich*, No. 97APF08-975, 1998 WL 63528, at *3 (Ohio Ct. App. Feb. 10, 1998) (stating that separating labor costs from material costs for purposes of depreciation was "fundamentally unsound" in a child support case).  Others say they are not.  *See, e.g.*, *Ohio Edison Co. v. Royer*, 92 N.E.3d 912, 917 (Ohio Ct. App. 2018) (excluding labor costs from depreciation of damages in the context of a tort claim for negligent destruction of a utility pole); *Illuminating Co. v. Wiser*, 114 N.E.3d 240, 246 (Ohio Ct. App. 2018) (same).

Only the state trial courts—the Ohio Courts of Common Pleas—have precedent squarely on point.  State trial court opinions are relevant data to the extent they are persuasive.  *See Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985).  To our knowledge, the lone Ohio courts to address today's question are the Courts of Common Pleas in Franklin and Cuyahoga Counties.  And they reached opposite conclusions.  *Ingram v. Liberty Ins. Corp.*, No. 16CVH06-5538, at p. 6 (Ohio Ct. Com. Pl. Mar. 13, 2018); *Parker v. Am. Family Ins. Co.*, No. 865773, at pp. 6–7 (Ohio Ct. Com. Pl. June 13, 2019).  In *Ingram*, on practically indistinguishable facts, the state trial court found that the insured's view that labor costs were not depreciable in an ACV home insurance policy was reasonable.  *Id.* at p. 6.  Like here, the court there recognized the issue as one of first impression, with no conclusive answer as a matter of Ohio law.  Examining several of the same conflicting authorities discussed here, the court ultimately allowed the dispute to survive Liberty's motion to dismiss.  But in *Parker*, the court took the opposite tack, adopting the reasoning of the district court in this case that ACV-insurance policies that do not distinguish between material and labor costs when providing for depreciation deductions

unambiguously allow for depreciation of the entire cost of an insured structure—including both materials and labor.  No. 865773, at pp. 6–7.

4.   We proceed to one last category of relevant data: the applicable rules of other jurisdictions. *Garden City*, 55 F.3d at 1130.  Outside Ohio, numerous courts have tackled today's question.  Assessing that universe of decisions, the majority view favors labor-cost depreciation when calculating ACV.

a.  The majority view traces back to the Oklahoma Supreme Court's decision in *Redcorn v. State Farm Fire & Cas. Co.*, 55 P.3d 1017 (Okla. 2002).  At issue in *Redcorn* was a State Farm homeowner's policy that provided for reimbursement on an ACV basis.  After his home experienced storm damage, Redcorn filed a claim with State Farm.  State Farm determined the amount of damage to Redcorn's home and then depreciated the full value of the home—both material and labor costs—before paying out the reduced amount.  Contesting the labor deprecation, Redcorn filed suit in federal court.  As the homeowner's policy in question was governed by Oklahoma law, the district court certified to the Oklahoma Supreme Court the question whether labor costs were depreciable as a matter of state law.

Answering the question in the affirmative, the state court reasoned that dividing labor and materials for purposes of depreciation was untenable.  Materials and labor, the court concluded, fuse into the finished roof.  It is thus reasonable to conclude, the court observed, that when that finished good depreciates, both the labor and material components of the asset's total value should depreciate in unison, absent a specific contrary statutory or contractual provision.  And as neither the policy language nor Oklahoma law split the value of insured property into its component parts, the insured's interpretation of the contract was unreasonable.  *Id.* at 1021.  Numerous courts have followed *Redcorn*'s lead.  *See, e.g.*, *In re State Farm Fire & Cas. Co.*, 872 F.3d 567, 576–77 (8th Cir. 2017); *Graves*, 686 F. App'x at 539; *Riggins*, 281 F. Supp. 3d at 789; *Basham v. United Servs. Auto. Ass'n*, No. 16-cv-03057-RBJ, 2017 WL 3217768, at *3 (D. Colo. July 28, 2017); *Ware v. Metro. Prop. & Cas. Ins. Co.*, 220 F. Supp. 3d 1288, 1290–91 (M.D. Ala. 2016);  *Wilcox v. State Farm Fire & Cas. Co.*, 874 N.W.2d 780, 784–85 (Minn. 2016); *Henn v. Am. Family Mut. Ins. Co.*, 894 N.W.2d 179, 189–90 (Neb. 2017).

To illustrate the point, consider our roof example from above.  On Perry's view, the shingles and wooden boards used to construct the roof depreciate in value, while the labor used to combine those materials into a finished roof does not.  Yet where did the shingles and boards originally come from?  Like money, wooden boards do not grow on trees.  Rather, they are *made* from them.  To do so requires labor.  One must cut down a tree, saw the raw lumber into wooden boards, and then sand the boards, thereby fusing one's labor with the timber.  So by depreciating wooden boards, something even Perry agrees is appropriate in the ACV setting, one is, in essence, depreciating both materials and labor, giving force to the broader deprecation of labor (along with materials) in calculating ACV.

It bears noting that the *Redcorn* majority, in reaching its conclusion, employed the "broad evidence rule," a doctrine which allows a claims adjuster to consider many factors in determining the actual cash value of a damaged or destroyed home.  *In re State Farm Fire & Cas. Co.*, 872 F.3d at 576–77 (quoting *Wilcox*, 874 N.W.2d at 785) ("[E]mbedded-labor-cost depreciation is one factor that the trier of fact may *consider* and weigh among other factors to determine the actual cash value of the damaged property . . . . We are not persuaded that depreciation of embedded labor costs is so illogical that it may never be considered.") (emphasis in original)).  Many of the  decisions that followed *Redcorn* likewise embraced the "broad evidence rule."  Perry thus reads *Redcorn* and its progeny to stand for the proposition that embedded labor may be considered as one factor among many in the ACV analysis rather than as the exclusive means by which ACV is measured.  But, notes Perry, Ohio does not observe the broad-evidence rule.  By regulation, it limits the ACV calculation to a strictly replacement-cost-less-depreciation format.  *See* Ohio Admin. Code § 3901-1-54(I)(2)(a).  On that basis, Perry says that *Redcorn* has no utility here.

Perry's argument notwithstanding, *Redcorn's* reasoning rests on solid conceptual ground.  We thus cannot discount the decision solely on the basis of its attention to the broad-evidence rule.

b.  While influential, *Redcorn* has not been uniformly followed.  In fact, numerous courts have broken with the *Redcorn* majority, as did the three dissenting justices of the Oklahoma Supreme Court in *Redcorn* itself.  The *Redcorn* dissent reasoned that while a roof is a finished

product, its value does not manifest until it is installed as part of a home. 55 P.3d at 1021–23. By the same token, when an insured files a claim for a new roof, new labor is required to install that roof, no matter how depreciated the roof may be. In this way, ACV payments should reimburse an insured for the combination of a product (the materials needed to make a roof) and a service (the labor to install them). *Id.*

Many courts have found this reasoning persuasive. The Arkansas Supreme Court explicitly adopted the reasoning of the *Redcorn* dissenters in *Adams v. Cameron Mut. Ins. Co.*, 430 S.W.3d 675, 678–79 (Ark. 2013) ("We, like [the] dissenters [in *Redcorn*], simply cannot say that labor falls within that which can be depreciable."); *see also id.* at 679 ("[W]e hold that the costs of labor may not be depreciated when determining the actual cash value of a covered loss under an indemnity insurance policy that does not define the term actual cash value.") (internal quotation marks omitted); *see also, e.g.*, *Mitchell v. State Farm Fire & Cas. Co.*, 335 F. Supp. 3d 847, 852–53 (N.D. Miss. 2018); *Arnold v. State Farm Fire & Cas. Co.*, 268 F. Supp. 3d 1297, 1311–12 (S.D. Ala. 2017); *Bailey v. State Farm Fire & Cas. Co.*, No. 14-53, 2015 WL 1401640, at *7–8 (E.D. Ky. Mar. 25, 2015).

Add to that lineup of courts our own. In *Hicks v. State Farm Fire & Cas. Co.*, we concluded that labor costs were not depreciable as a matter of Kentucky law. 751 F. App'x 703, 708–10 (6th Cir. 2018). But in what seems to be par for the ACV course, that view was not uniform. The majority opinion in *Hicks* drew a well-reasoned dissent expressing a view shared by the *Redcorn* majority. *Id.* at 712 (Griffin, J., dissenting) ("[B]ecause the plain meaning of the ACV regulation broadly provides for any and all depreciation, it is not ambiguous and State Farm may depreciate materials and labor when calculating ACV.").

The Kentucky regulation at issue in *Hicks* explained that "the insurer shall determine actual cash value as follows: replacement cost of property at the time of the loss less depreciation, if any." 806 Ky. Admin. Regs. 12:095(9)(2)(a). That language largely mirrors the comparable Ohio Administrative Code provision. *See* Ohio Admin. Code § 3901-1-54(I)(2)(a) ("The insurer shall determine actual cash value by determining the replacement cost of property at the time of loss, including sales tax, less any depreciation."). Two differences are apparent. One, only Ohio, as already addressed, mentions sales tax. And two, the respective state

regulations vary between "less depreciation, if any" (Kentucky) and "less any depreciation" (Ohio).  But neither difference has much bearing on whether each respective regulation allows for labor depreciation.

In concluding that labor costs were not depreciable as a matter of Kentucky law, *Hicks* favorably cited the analysis in *Brown v. Travelers Cas. Ins. Co. of Am.*, No.15-50-ART, 2016 WL 1644342, at *4–5 (E.D. Ky. Apr. 25, 2016).  In *Brown*, then-District-Court Judge Thapar addressed the same question raised today.  As we have above, Judge Thapar observed that labor does depreciate in some contexts, while it does not in others.  *Id.* at *3.  What distinguishes those contexts, he observed, was whether the labor has merged with a finished good.  Depreciable labor has; non-depreciable labor has not.  As to the value of labor needed to replace a wall in a damaged home, it was more akin to pure labor, Judge Thapar concluded, than to embedded labor in a finished good.  Like the *Redcorn* dissenters, he observed that a wall, like a roof, has no value until it becomes part of the larger structure of the home.  While depreciated materials could be purchased to replace a wall, new labor is required every time a wall is replaced, no matter how depreciated the wall may be.  Thus, Judge Thapar concluded, the term ACV was "at least ambiguous" as a matter of Kentucky law.  *Id.* at *3 n.3.  And "where a term in an insurance contract is ambiguous, exclusionary or limiting language is to be strictly construed against the insurance company and in favor of the extension of coverage."  *Id.* at *3 (quotations omitted).  Judge Thapar, however, emphasized the need for discovery before rendering a final decision.  *Id.*

\*       \*       \*       \*       \*

While it may be the majority view, we cannot say at this threshold stage, as did the district court, that Allstate's view is the only potentially reasonable interpretation of the policy language.  True, as Allstate notes, one court's aberrant decision cannot unsettle the meaning of well-defined legal terms.  But that is not what we have here.  Both Allstate and Perry's views have ample support.  All things considered, including the somewhat detailed discussion necessary to explain these competing views, we find that, at this stage, both views are reasonable.  Under Ohio law, Perry's claim therefore survives Allstate's Rule 12(b)(6) motion.  *Andersen*, 757 N.E.2d at 332–33.  Accordingly, we remand the matter for further consideration in the district court.

That said, if Allstate in the end is to avoid judgment in Perry's favor, it effectively bears the burden of persuasion to show that Perry's view regarding labor depreciation ultimately is unreasonable. We leave those further considerations for resolution, in the first instance, in the district court.