NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0484n.06

No. 21-3306

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

JEFFREY KAHL, Administrator of the Estate of )
HEATHER KAHL, )
                                         )
      **Plaintiff–Appellant,** )
                                           )
v. )
                                           )
SPECTRUM SECURITY, LLC, doing business )
as Spectrum; TWC SECURITY, LLC, doing )     ON APPEAL FROM THE
business as Time Warner; TWC SECURITY, )     UNITED STATES DISTRICT
INC., doing business as Time Warner Cable; )     COURT FOR THE NORTHERN
CHARTER COMMUNICATIONS, INC., doing )     DISTRICT OF OHIO
business as Spectrum, )
                                           )
      **Defendants–Appellees,** )     **OPINION**
                                           )
and )
                                           )
JOHN DOE #1, )
                                           )
      **Defendant.** )
                                           )

FILED
Oct 26, 2021
DEBORAH S. HUNT, Clerk

**Before: GUY, MOORE, and GIBBONS, Circuit Judges.**

      **KAREN NELSON MOORE, Circuit Judge.** After a fire at Heather Kahl's house in

Mansfield, Ohio claimed her life, her husband, Jeffrey Kahl, brought this wrongful death suit

against the companies that provided the couple with alarm services: Spectrum, Time Warner, and

Time Warner Cable (collectively, the defendants).[1] Jeffrey claimed that the defendants had acted

with negligence and gross negligence under Ohio law in their installation and monitoring of a

---

[1]Because the couple shares a last name, we refer to each by their first name.

smoke alarm that Time Warner Cable had provided the house as part of a security system package, and that this negligence and gross negligence led to Heather's death. Because Jeffrey was unable to identify any duty that could have rendered the defendants subject to tort liability, the district court denied his motion for summary judgment and granted defendants' motion for summary judgment. For the following reasons, we **AFFIRM**.

## I. BACKGROUND

### A. Facts

Since 2003, the Kahls had lived in a two-bedroom, single-story, 844-square-foot house. R. 77-1 (Kahl Dep. at 8: 5, 55: 17–23) (Page ID #1089, 1101). On October 10, 2013, Heather contracted with Time Warner Cable to have the company provide home security services through a package called the "Intelligent Home System." R. 85-17 (Work Order) (Page ID #1874–83). Included in the package was one free smoke detector, which a Time Warner Cable employee, Michael Blaney, installed. R. 85-17 (Work Order at 6) (Page ID #1879); R. 66-1 (Blaney Dep. at 68: 23–25, 69: 1–3) (Page ID #320). The smoke detector was linked remotely to a monitoring center and could inform the company of different information, such as the outbreak of a fire. R. 76-2 (Activity Log) (Page ID #1009–15).

At the time of the installation, the Kahl household had only one working smoke detector, which was in the hallway outside the bedrooms. R. 77-1 (Kahl Dep. at 60–62, 123–24) (Page ID #1102–03, 1118). Blaney replaced the old smoke detector with a new one in the same place. R. 77-1 (Kahl Dep. at 132–33) (Page ID #1120). Jeffrey, who was out of town at the time, remembers seeing that the old smoke detector had been taken down when he returned home. *Id.*

After the new smoke detector was installed, Jeffrey claims that Spectrum acquired Time Warner Cable, a fact which the defendants do not dispute. Kahl Br. at 3 n.1.

In June 2017, Spectrum began to receive a series of signals from the Kahls' smoke detector indicating that the device had a low battery. R. 76-2 (Activity Log at 2) (Page ID #1010). Spectrum kept an activity log of each of these signals and the company's response to them. R. 76-2 (Activity Log) (Page ID #1009–15). When Spectrum received such a signal, the company notified Heather about the low battery by sending her an email and a text message as well as calling her on the phone. R. 76-2 (Activity Log at 2) (Page ID #1010). The company also sent her a replacement battery. *Id.*; R. 72-1 (Vault Dep. at 92) (Page ID #768). The low-battery problem persisted into July, with Spectrum receiving a signal that indicated a "loss of supervision" from the smoke detector. R. 76-2 (Activity Log at 2–3) (Page ID #1010–11). This led the company to call Heather to schedule a service appointment for July 16, 2017, speaking with her directly to set up the appointment. R. 76-2 (Activity Log at 3) (Page ID #1011). That appointment never took place, however; on the scheduled day, Heather cancelled via text. R. 72-1 (Vault Dep. at 115) (Page ID #791).

Spectrum continued to receive signals at various intervals concerning the smoke detector's low battery in the months that followed. R. 76-2 (Activity Log at 3–4) (Page ID #1011–12). Again, the company sent Heather duplicative notifications of the issue each time that it received and logged a signal. *Id.* No signal was recorded in Spectrum's activity log on September 14, 2017, though Heather's iControl panel—an in-home, central processing hub that allowed users of the Intelligent Home System to monitor their various devices—indicated that the smoke detector battery was low on that day. R. 76-2 (Activity Log at 4) (Page ID #1012); R. 85-17 (iControl

Panel) (Page ID #1936–37); R. 70-1 (de Vries Dep. at 33: 12–16) (Page ID #477). Spectrum did log low-battery signals and attendant notifications to Heather on September 26, 2017, as well as on October 12, 14, 15, and 16, 2017. R. 76-2 (Activity Log at 4–5) (Page ID #1012–13). By the last notification on October 16, 2017, Spectrum had contacted Heather on thirteen different days about the smoke detector's low battery. R. 76-2 (Activity Log at 2–5) (Page ID #1009–13).

Then, sometime during either the evening of October 28 or early morning of October 29, 2017, a fire began in the house. R. 85-13 (Fire Rep. at 1) (Page ID #1865). Although investigators were unable to establish its cause, the fire likely originated in or near either a closet or attic stairwell that was close to the home's kitchen, smoldered for some time, and then vented through the roof. R. 85-11 (Fire Marshal Rep. at 4–6) (Page ID #1852–54); R. 68-1 (Paulus Dep. at 13: 13–16) (Page ID #400); R. 82-1 (Illig Dep. at 55: 7–10) (Page ID #1400). At the time, Heather was alone in the house and asleep in the living room on the couch. R. 85-25 (de Vries Rep. at 4) (Page ID #2241). Eventually, a neighbor noticed flames projecting from the house's roof and alerted the authorities. R. 85-13 (Fire Rep. at 2) (Page ID #1866). By the time firefighters arrived, Heather was unresponsive. R. 85-14 (EMS Rep. at 2) (Page ID #1870). She was transferred to the local hospital and soon after pronounced dead due to the "[i]nhalation of products of combustion." R. 85-12 (Coroner's Rep. at 2–3) (Page ID #1857–58). The smoke detector never alerted Spectrum of the fire. R. 76-2 (Activity Log at 5) (Page ID #1013).

## B. Procedural History

Jeffrey, acting as administrator of Heather's estate, initiated this lawsuit against the defendants in the Cuyahoga County Court of Common Pleas. R. 1 (Notice of Removal at 1) (Page ID #1). The defendants subsequently removed the case to the United States District Court for the

4

Northern District of Ohio, which had jurisdiction over the matter pursuant to the diversity statute, 28 U.S.C. § 1332(a). R. 1 (Notice of Removal) (Page ID #1–21). Jeffrey then amended his complaint twice, alleging, among other claims, that the defendants had been negligent and grossly negligent in their installing, servicing, and monitoring of the smoke detector, and that this negligent and grossly negligent conduct was the proximate cause of Heather's death.[2] R. 26 (Second Am. Compl. ¶¶ 11, 47) (Page ID #142, 147).

The defendants moved for summary judgment, arguing that they owed no duties to Heather other than those embodied in their contract. R. 76 (Mot. Summ. J. at 6–10) (Page ID #979–82). Jeffrey cross moved for summary judgment and argued that the defendants had been negligent per se for failing to follow Ohio's fire code, which he claimed mandated that the defendants install smoke detectors in every sleeping room, outside every sleeping room, and at least one on every level. R. 85 (Mot. Summ. J. at 12–15) (Page ID #1738–41). Jeffrey also claimed that the defendants were negligent per se for failing to alert Heather of a low-battery signal it received on September 14, 2017. R. 85 (Mot. Summ. J. at 15–17) (Page ID #1741–43). The district court denied Jeffrey's motion for summary judgment and granted the defendants' motion for summary judgment. R. 96 (Dist. Ct. Mem. Op) (Page ID #2394–2417). Jeffrey filed a timely appeal. R. 98 (Notice of Appeal) (Page ID #2419–20).

---

[2]Jeffrey also brought a survivorship claim, a claim for punitive damages, a claim for breach of implied warranty of merchantability, a claim for breach of implied warranty of fitness for a particular purpose, several claims under Ohio consumer protection and products liability statutes, and a claim for breach of contract for unworkmanlike performance. R. 26 (Second Am. Compl. at 3–8) (Page ID #142–47). The district court granted the defendants' motion for summary judgment on all these claims, and Jeffrey does not appear to renew his arguments regarding them on appeal. R. 96 (Dist. Ct. Mem. Op.) (Page ID #2394–2417). *See Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.").

## II. ANALYSIS

We review the district court's grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party. *Sigler v. American Honda Motor Co.*, 532 F.3d 469, 482 (6th Cir. 2008). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler*, 532 F.3d at 483. "Once the movant has satisfied its burden, the nonmoving party must 'come forward with evidence showing that there is a genuine issue for trial.'" *Id.* (quoting *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000)). This standard remains the same when the parties have both moved for summary judgment. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016).

On appeal, Jeffrey argues that the defendants owed Heather and him two separate duties of care: first, a duty to install more smoke detectors in the house; and, second, a duty to warn Heather about the fire as well as about the low-battery signal from September 14, 2017.[3] Kahl Br. at 10–14, 37–38. Because Jeffrey argues that these duties arise under Ohio law, we look to the decisions of the Ohio Supreme Court for guidance. *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 421 (6th Cir. 2020). The court has not ruled on whether state law imposes on alarm companies the duties described by Jeffrey. For this reason, we must "look to the decisions of [Ohio's] lower courts, to the extent they are persuasive, to predict how the Ohio Supreme Court would decide the issue[s]"

---

[3]Jeffrey spends much effort on disputing the existence and enforceability of a contract between Heather and the defendants. Kahl Br. at 15–34. This strategy appears to be aimed at invalidating certain terms in the contract purporting to limit or even eliminate Spectrum's liability. Jeffrey concludes in his reply brief, "[s]ince the contract is unproven, illegal, and void, then the exculpatory clause is similarly void and unenforceable." Kahl Reply Br. at 15. Because we affirm the district court for non-contractual reasons, we do not address these issues.

presented by this appeal. *Id.* Before turning to these decisions, however, we outline the basic framework that guides whether a duty exists under Ohio tort law.

"It is rudimentary that in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom." *Menifee v. Ohio Welding Prods., Inc.*, 472 N.E.2d 707, 710 (Ohio 1984); *see also Winkle v. Zettler Funeral Homes, Inc.*, 912 N.E.2d 151, 161 (Ohio Ct. App. 2009) (detailing elements for gross negligence). "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff." *Wallace v. Ohio Dep't of Com.* 773 N.E.2d 1018, 1026 (Ohio 2002) (quoting *Com. & Indus. Ins. Co. v. City of Toledo*, 543 N.E.2d 1188, 1192 (Ohio 1989)). Whether a duty exists is a question of law that the court must decide. *Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989). To this end, "a duty may be established by common law, legislative enactment, or by the particular facts and circumstances of the case." *Chambers v. St. Mary's Sch.*, 697 N.E.2d 198, 201 (Ohio 1998). Jeffrey focuses on the common law and, especially, legislative enactments.

Although statutes may impose a tort duty, not every violation of a statutory duty is a tort. Specificity is key. On the one hand, "[w]here a legislative enactment imposes a specific duty for the safety of others, failure to perform that duty is negligence *per se*." *Id.*; *see also Lang v. Holly Hill Motel, Inc.*, 909 N.E.2d 120, 124 (Ohio 2009) ("The concept of negligence per se allows the plaintiff to prove the first two prongs of the negligence test, duty and breach of duty, by merely showing that the defendant committed or omitted a specific act prohibited or required by statute; no other facts are relevant."). To qualify as "specific," such an enactment must establish "'a positive and definite standard of care . . . whereby a jury may determine whether there has been a

7

violation thereof by finding a single issue of fact.'" *Sikora v. Wenzel*, 727 N.E.2d 1277, 1280 (Ohio 2000) (quoting *Chambers*, 697 N.E.2d at 201). On the other hand, a statute that contains only "a general, abstract description of a duty" will not suffice to impose a duty for tort law. *Id*. With all this in mind, we examine each duty that Jeffrey describes in turn.

## A. Duty to Install More Smoke Detectors

To support his claim that the defendants owed Heather a duty to install additional smoke detectors, Jeffrey focuses on parts of the Ohio Fire Code, *see* Ohio Admin. Code § 1301:7-7-01(A)(1) (2013), specifically those found in Ohio Administrative Code § 1301:7-7-09.[4] Kahl Br. at 27–28, 32. The provisions of the Ohio Fire Code contained in § 1301:7-7-09 govern where "fire protection systems are required." Ohio Admin. Code § 1301:7-7-09(A)(1). Smoke detectors qualify as fire protection systems. *See* Ohio Admin. Code §§ 1301:7-7-09(B)(1), 1301:7-7-02 ("Fire protection systems" are "[a]pproved devices, equipment and systems or combinations of systems used to detect a fire, activate an alarm, extinguish or control a fire, control or manage smoke and products of a fire or any combination thereof."). Jeffrey points to a series of provisions in Ohio Administrative Code § 1301:7-7-09 that he argues mandated that smoke detectors should have been installed in every sleeping room, outside of each such room, and on every level in his home.[5] *See, e.g.*, Ohio Admin. Code § 1301:7-7-09(A)(6)(a), (G)(2)(j)(i), (G)(2)(k)(i), (G)(3).

---

[4]Unless otherwise noted, we cite the 2013 version of the Ohio Fire Code as this was the governing law at the time of the installation and the relevant portions remained unchanged from that time up through the fire.

[5]Jeffrey also directs our attention to § 29.5.1 of the *NFPA 72: The National Fire Alarm and Signaling Code* (2013). Kahl Br. at 12, 27. Published by the National Fire Protection Association, the *NFPA 72* is a set of standards that the organization recommends govern fire-alarm systems. *See NFPA 72*, § 1.2.1. On its own, the publication does not have the force of law. This is apparent from the section of the *NFPA 72* that Jeffrey quotes, which explains that smoke detectors, "[w]here *required by other governing laws, codes, or standards for a specific type of occupancy*," must be installed in every sleeping room, outside of each such room, and on every level. *NFPA 72*, § 29.5.1 (emphasis added). Because Jeffrey relies on the Ohio Fire Code to incorporate the standards contained in the *NFPA 72*, we focus our analysis on the state fire code.

The Ohio Fire Code is an administrative regulation promulgated by the Ohio Fire Marshal. *See* Ohio Revised Code § 3737.82. Recognizing that an administrative code is not a legislative enactment, Jeffrey argues that two Ohio statutes mandated that the defendants follow the requirements for smoke detectors set out in the Ohio Fire Code. Kahl Br. at 26. The first, Ohio Revised Code § 3737.51(A), provides: "No person shall knowingly violate any provision of the state fire code or any order made pursuant to it." The second, Ohio Revised Code § 3737.65(A), mandates that "[n]o person shall sell, offer for sale, or use any fire protection or fire fighting equipment that does not meet the minimum standards established by the fire marshal in the state fire code."

Whether an administrative regulation such as the Ohio Fire Code can create a duty for the purposes of tort liability under Ohio law, or rather whether violation of such a regulation may serve only as evidence of a dangerous condition, is unclear.[6] We do not need to predict how the Ohio Supreme Court would resolve this issue, however. Even if the Ohio Fire Code does impose a tort-based duty to install more smoke detectors, the code is clear about whose duty this is. As Ohio Administrative Code § 1301:7-7-01(G)(5) provides: "Correction and abatement of violations of this code shall be the responsibility of the owner." In other words, it was not the defendants who were obligated to install more smoke detectors in the Kahl residence. Instead, it was the Kahls'

---

[6]The Ohio Supreme Court has sent mixed messages about whether an administrative regulation such as the Ohio Fire Code can create a duty for the purpose of tort liability. In two cases, *Chambers v. St. Mary's School* and *Lang v. Holly Hill Motel, Inc.*, the court rejected the idea. *See Lang*, 909 N.E.2d at 124; *Chambers*, 697 N.E.2d at 202. Between these cases, however, the court decided *Sikora v. Wenzel*, in which it held that the Ohio Building Code—another administrative regulation—*could* create a duty of care where a statute mandated that it be followed by landlords. *See Sikora*, 727 N.E.2d at 1282. In *Lang*, the Ohio Supreme Court did not refer to *Sikora*. At least one lower court has reconciled *Lang* and *Sikora* by holding that if compliance with an administrative regulation is mandated by a legislative enactment, then that regulation can impose a duty of care the violation of which constitutes negligence per se. *See Riehl v. Bird's Nest, Inc.*, No. OT-09-003, 2009 WL 4893384, at *4 (Ohio Ct. App. Dec. 18, 2009).

responsibility as the owners of the home to bring the property into compliance with the Ohio Fire Code by installing the requisite number of smoke detectors.

The Ohio cases that Jeffrey cites regarding the duty to install more smoke detectors bolster rather than undermine this point. Kahl Br. at 35–36. These cases all involved landlords. *See Shump v. First Continental-Robinwood Assocs.*, 644 N.E.2d 291, 293 n.1, 297–98 (Ohio 1994); *Baraby v. Swords*, 851 N.E.2d 559, 567 (Ohio Ct. App. 2006); *Burdick v. Nevel*, No. 98AP-697, 1999 WL 235435, at \*2 (Ohio Ct. App. Apr. 20, 1999). Given that landlords are owners, the Ohio Fire Code would clearly mandate that they fix any violations of the code such as an insufficient number of smoke detectors present at their properties. So, too, does the state's fire code dictate that the Kahls, not the defendants, needed to ensure that more smoke detectors were installed in the house.[7] For this reason, we are unpersuaded by Jeffrey's attempt to ground his first duty in the Ohio Fire Code and its application to the defendants through two statutes—§ 3737.51(A) and § 3737.65(A)—found in the Ohio Revised Code.

## B. Duty to Warn

Turning next to whether the defendants owed Heather any duty to warn, Jeffrey details two distinct duties. First, he argues that the defendants owed Heather and the rest of the Kahl household a general common-law duty to provide early warning of the fire based on § 323 and § 324A of the Restatement (Second) of Torts (Am. L. Inst. 1965). Kahl Br. at 37–38. Jeffrey does not specify further what this duty entailed regarding the defendants' installing, servicing, and

---

[7]For the same reason, Jeffrey's argument that another law—an ordinance enacted by the City of Mansfield that incorporated the 2007 version of the Ohio Fire Code—imposed specific enough duties on the defendants to render them subject to tort liability is unpersuasive. *See* Mansfield, Ohio Ordinances ch. 1501. Kahl Br. at 27. Ohio Administrative Code § 1301:7-7-01(G)(5) (2007) also placed the responsibility for the correction of fire code violations on a property's owner.

monitoring of the smoke detector. Second, Jeffrey maintains that the defendants owed Heather a more particular duty under the *NFPA 72* to notify her about the low-battery signal occurring on September 14, 2017. Kahl Br. at 51–54. Neither theory leads us to conclude that the district court improperly granted the defendants' motion for summary judgment.

Although Jeffrey's argument concerning the duty to warn is vague, we need not inquire into the source of the obligation. Even if such a duty existed, the defendants argue that Heather impliedly assumed the risks associated with a non-working smoke detector when she repeatedly ignored Spectrum's notifications about the issue. Spectrum Br. at 19–20. The defendants argued in the district court that Heather had assumed the risk, but the court did not address this argument. R. 76 (Mot. Summ. J. at 10–11) (Page ID #982–83); R. 96 (Dist. Ct. Mem. Op. at 17 n.15) (Page ID #2410). We may affirm the district court's decision on other grounds, however, if those grounds are supported by the record. *See Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (en banc). Because we conclude that Heather assumed the risk of a nonfunctioning smoke detector, we affirm on these grounds.

"Implied assumption of risk is defined as plaintiff's consent to or acquiescence in an appreciated, known or obvious risk to plaintiff's safety." *Collier v. Northland Swim Club*, 518 N.E.2d 1226, 1228 (Ohio Ct. App. 1987). Under Ohio law, implied assumption of risk is not a standalone defense to tort liability. Instead, if a plaintiff impliedly assumed a risk, then this will result in a court finding the plaintiff to be negligent to some degree. *See Gallagher v. Cleveland Browns Football Co.*, 659 N.E.2d 1232, 1236 (Ohio 1996); *Anderson v. Ceccardi*, 451 N.E.2d

780, 783 (Ohio 1983); *Stewart v. Urig*, 893 N.E.2d 245, 250 (Ohio Ct. App. 2008).[8] For a plaintiff to recover in a tort suit, the negligence that results from the plaintiff assuming a risk must be less than the combined negligence of the defendants. *See* Ohio Rev. Code § 2315.33; *Mayhew v. Massey*, 86 N.E.3d 758, 773 (Ohio Ct. App. 2017). If a plaintiff seeks damages for the wrongful death of another, then the court will factor into the comparative negligence calculation whether the decedent impliedly assumed a risk that led to their demise. *See Hirschbach v. Cincinnati Gas & Elec. Co.*, 452 N.E.2d 326, 329–30 (Ohio 1983).

Generally, apportioning relative degrees of negligence is a question of fact and ought "to be done by the jury in a jury trial." *Collier*, 518 N.E.2d at 1229. Summary judgment may be appropriate, however, "where, after construing the evidence most strongly in plaintiff's favor, a reasonable person could only conclude that plaintiff's negligence was greater than the negligence of defendant." *Id*. at 1230; *see also Bundschu v. Naffah*, 768 N.E.2d 1215, 1221 (Ohio Ct. App. 2002) (noting how implied "assumption of the risk is subsumed under Ohio's comparative negligence scheme, and does not act as a bar to recovery unless the plaintiff's negligence in consenting to the risk is greater than the defendant's negligence"). As a result, Ohio courts do grant summary judgment to defendants in the "rare circumstance," *Mayhew*, 86 N.E.3d at 773, where the only reasonable conclusion is that a plaintiff assumed the risk, and that the plaintiff's negligence exceeded the negligence of the defendants. *See, e.g.*, *id*. at 773–74; *Westfall v. Lemon*,

---

[8]Although Jeffrey argues otherwise, *Anderson v. Ceccardi* does not demonstrate that the doctrine of implied assumption of the risk is inapplicable in his case. *See* Kahl Reply Br. at 22. In *Anderson*, although a tenant repeatedly warned a landlord about faulty steps leading to the front door of a rental property, the Ohio Supreme Court rejected the landlord's attempt to raise implied assumption of the risk as a defense, noting that negligence per se applied. 451 N.E.2d at 784. As Jeffrey has not established negligence per se, implied assumption of the risk is an available defense.

No. 14CA12, 2015 WL 459283, at *9 (Ohio Ct. App. Jan. 27, 2015); *Deem v. Columbus S. Power Co.*, No. 07CA6, 2007 WL 2421409, at *4 (Ohio Ct. App. Aug. 22, 2007).

Under the unique facts of this case, a reasonable person must conclude that Heather's negligence in failing to heed the warnings provided by Spectrum about the low-battery signal outweighed any negligence by the defendants. At the outset, we emphasize that this is not a case where a fire-alarm company provided little or no warning about faulty equipment. Starting in June 2017, Spectrum repeatedly notified Heather of the smoke detector's dying battery, using different mediums to send duplicative alerts. R. 76-2 (Activity Log at 2–5) (Page ID #1010–13). The company also provided a complimentary replacement battery to fix the problem. R. 76-2 (Activity Log at 2) (Page ID #1010); R. 72-1 (Vault Dep. at 92) (Page ID #768). When the issue persisted after Spectrum shipped the new battery to Heather, the company scheduled a maintenance appointment to have a technician examine the smoke detector. R. 76-2 (Activity Log at 3) (Page ID #1011). Heather was certainly aware of the problem with the smoke detector as she cancelled that appointment the day it was scheduled to take place. R. 72-1 (Vault Dep. at 115) (Page ID #791).

Jeffrey's focus on the failure to notify Heather on September 14 of the low-battery signal that day does not alter the fact that Heather knew that there was a problem with the smoke detector, and that the risks posed by this problem were obvious. It is true that the iControl panel in the Kahl residence registered a low-battery signal on September 14 and that the defendants did not alert Heather of that problem that day. R. 85-17 (iControl Panel) (Page ID #1936–37); R. 76-2 (Activity Log at 4) (Page ID #1012). Crucially, however, Spectrum made five attempts *after* September 14 to alert Heather to the issue, the last attempt coming approximately two weeks before the fire.

13

R. 76-2 (Activity Log at 4–5) (Page ID #1012–13). These efforts came in the form of emails, texts, and phone calls. *Id*. In total, between the time when the low-battery signals began in late June and the time of the fire in late October, Spectrum reached out to Heather on thirteen different days to alert her of the problem. R. 76-2 (Activity Log at 2–5) (Page ID #1010–13). Given that the Kahl residence had only one smoke detector, a dying battery in the device also presented an obvious risk that there would be no alarm in the event of a fire. Consequently, and despite the tragic outcome, we conclude that summary judgment was appropriate on the duty-to-warn claims under Ohio law.

## III. CONCLUSION

Because it was proper to grant the defendants' motion for summary judgment on Jeffrey's negligence and gross negligence claims, it follows that the district court's decision to deny Jeffrey's motion for summary judgment on these claims was also proper. Therefore, we **AFFIRM** the district court's judgment.